### HUNT v. CLIFFORD H. BROWN & CO., Inc.

No. 14383.

Court of Civil Appeals of Texas. Dallas.

March 16, 1951.

Rehearing Denied April 27, 1951.

Shank, Dedman & Payne, of Dallas, for appellant.

C. A. Mattay, R. G. Smith and George S. Peabody, all of Dallas, for appellee.

CRAMER, Justice.

This is an appeal from an interlocutory order entered on application of appellee, after hearing. The order mandatorily commanded appellant to furnish and deliver to appellee gas from Dupuy Well No. 1, in an amount and volume of as much as 250,000 cubic feet of gas per day, for plaintiff's use in gas lifting, repressuring, and operating Guidroz Well No. 1; said gas to be supplied and delivered (out of the excess above 500,000 cubic feet of gas per day supplied to United Gas Pipe Line Company under contract of the parties with said Company dated August 17, 1950) to appellee at said Dupuy Well No. 1 and to the connection, pipe line, and meter furnished by appellee at its own cost and without expense to appellant, at prevailing price therefor at said well; and that appellee, prior to the issuance of the writ, deposit with the District Clerk $750 to secure appellant in the payment for the gas and to further deposit sufficient sums from time to time to keep the balance on hand at $750 above the amounts due for gas delivered; and also file a $2,000 injunction bond. Appellee complied with the order, and the mandatory writ was issued. Appellant then duly perfected this appeal.

The main cause is for damages for loss of oil and gas values resulting to appellee by reason of appellant's refusal to furnish gas from Dupuy Well No. 1 for use in gas lifting, repressuring, and operating Dupuy Well No. B–1 and Guidroz Well No. 1, and for mandatory order, interlocutory and permanent, requiring appellant to furnish such gas.

The record discloses that the Dupuy and Guidroz leases on which the wells involved are located are situated in La Fourche Parish, Louisiana. The original base leases were each on form known as "La. 10 Special Rev. 3–43S; 'Pooling'. Gulf Form No. 313L" and contained the usual provisions authorizing assignment of the lease in whole or in part and the ratable apportionment of rentals from such separate parcels thereby created, and that default in the payment of rentals by the owner of one parcel should not affect the rights or obligations of the owners of other parcels of the lease. Both original leases also contained the following provisions: " * * * 10. Lessee shall have the use, free from royalty, of oil and gas produced from said land in all operations hereunder and for repressuring the oil and gas bearing formations, and for the latter purposes such gas may be injected at any point upon the said land or any other land upon the same structure or in the same pool."

The working interest in the Guidroz Well No. 1 situated on a segregated tract is owned solely by appellee Clifford H. Brown & Company. The working interest in Dupuy Well No. 1 situated on another segregated tract is owned one-half by appellant Hunt, one-fourth by Clifford H. Brown & Company, and one-fourth by Clifton L. Ganus, not a party to this suit, and who resides in Louisiana.

The three joint owners of Dupuy Well No. 1, on August 17, 1950, entered into a contract with United Gas Pipe Line Company, the only gas pipe line operating in the Raceland oil field where both wells here involved are

located. The terms of such contract provided that the pipe line company was given the right and privilege of purchasing "* * * all or any less quantities of the gas which can be produced from the land and leaseholds covered hereby * * *" and "jointly owned by the parties seller hereto, in the Raceland field * * *." Such contract also contained the following provisions: "6. Buyer shall not be obligated to take natural gas or to continue taking natural gas from Seller hereunder when Seller is unable to deliver natural gas in commercial quantities (Commercial quantities being defined as an amount in excess of five hundred thousand (500,000) cubic feet per day) at a pressure sufficient to enter Buyer's main pipe lines against working pressure therein."

The record also shows that appellant Hunt had a 1/16th of 3/16ths overriding royalty interest in the Guidroz wells and in Dupuy wells excluding the twenty acres on which Dupuy Well No. 1 was located, but with all other incidental rights thereto. Also, that appellant furnished gas from Dupuy Well No. 1 for use at Guidroz No. 1 from May 1 to July 15, 1950, but thereafter declined to do so.

Appellee made repeated demands beginning September 1, 1950, to the date of the institution of this suit, that appellant furnish said gas. All such demands were refused by appellant. The record also discloses that appellee owns the working interest in well known as Dupuy Well No. B–1; that Dupuy Well B–1 began producing oil and casinghead gas November 26, 1950 and that appellee has been using such gas to kick Guidroz No. 1, and that Guidroz No. 1 has been producing oil since that date.

Appellant's first and third points assert that by the issuance of the writ it has been denied its day in court on the primary object of appellee's suit; and changes the status quo of the parties. Under the record we overrule these points. The status quo of actions such as are involved here is not one of rest but of action, and appellee's complaint is that it is the condition of rest, not of action, that will inflict the irreparable injury complained

of. Courts of equity will by preliminary order command action to continue pending a hearing on the merits under such circumstances, if the complainant is otherwise entitled thereto. Texas Pipe Line Co. v. Burton Drilling Co., Tex.Civ.App., 54 S.W. 2d 190.

Appellant's second point asserts that the mandatory injunction promotes a breach of its contract with the Pipe Line Company which has a prior right, since there was no obligation or contract by appellant to furnish gas for Guidroz Well No. 1.

This involves a construction of the provisions of the base lease, the contracts between the parties, and the contract between appellant and the Pipe Line Company. Paragraph 10 in the two base leases is quoted above. The contract between appellant and the Pipe Line Company in addition to the provisions above quoted applying to leasehold interest "jointly owned by the parties," contained the following: "* * *, subject, however, to the reservation by seller of sufficient gas for the repressuring of oil producing horizons in the Raceland field and such other gas as seller's lessors are entitled to use under the terms of any of seller's leases in said field. * * *."

Appellee asserts that since the trial court found that appellant had probable right under the terms and provisions of the base leases above quoted from, that appellant as operator had deprived appellee of such gas for such uses to appellee's injury and damages to the extent of about $200 per day, which will probably continue in the future and which will probably result in the loss of Guidroz Well No. 1 and a portion of the lease on which said well is located, and that such gas was not "securable in sufficient quantities from other sources by and efforts to purchase other gas from other production attempted by the plaintiff"; and that such finding had probable support in plaintiff's verified pleadings and in the evidence that this court should affirm the judgment below.

Admitting damage to appellee: Does the evidence and the sworn pleadings which do not conflict with the evidence, support,

or raise, a disputed issue of fact supporting the court's findings above referred to? The provisions of the base lease must be construed together and the separate provisions made to harmonize with all other provisions therein.

In Louisiana it is the established doctrine that the provisions of the lease, as here, allowing partial assignment and the apportionment of rentals, result in creating a separation of a part of the acreage, from the whole acreage covered by the lease, for all purposes. Swope v. Holmes, 169 La. 17, 124 So. 131; Roberson v. Pioneer Gas Co., 173 La. 313, 137 So. 46, 82 A.L.R. 1264; 20 Texas Law Review 316. The separate tracts upon which these two wells are located are therefore considered, under Louisiana Law, as separate leases, and the parties as separate lessees as to each separate tract.

Such being the rule, the rights of the parties are no longer mutual under the base lease, and the legal rights of the parties became a question of law and cannot be considered as disputed issues of fact, on which the court's finding could be based under the probable recovery rule. Therefore, as a matter of law, there was no probable or superior right in appellee to the use of the gas for repressuring, etc., Guidroz Well No. 1, as against the contractual right of the United Gas Pipe Line Company to such gas.

It is also settled law in Texas that to induce a person to break a contract is a tort. Under the record here, the mandatory injunction conflicts with the right of the United Gas Pipe Line to receive all the gas in question if they desire it, and for that reason, alone, it was not proper.

Appellant's fourth point asserts a lack of necessary parties. The record shows that United Gas Pipe Line Company is not a party to the suit. This point must be sustained, since the Pipe Line was a necessary party to the suit under the authority of Watkins Land Co. v. Clements, 98 Tex. 578, 86 S.W. 733, 70 L.R.A. 964; Bays v. Wright, Tex.Civ.App., 132 S.W.2d 144; Feldman v. Costa, 171 S.W.2d 200, by this Court. The late Justice Alexander, in the Bays case, supra, stated: "This is an equitable suit and the primary object of equity is to grant full relief and to adjust in one suit the rights and duties of all interested parties that grow out of or are connected with the subject matter of the suit. All persons in whose favor or against whom there might be a recovery, however, partial, and all persons who are so interested that their rights or duties might be affected by the decree, must be made parties in order that their rights may be adjudicated and finally determined, and all parties bound by a single decree. 17 Tex. Jur. 34; Pomeroy's Equity Juris., Vol. 1, 4th Ed., sec. 114; Montgomery v. Owen, Tex.Civ.App., 37 S.W.2d 1107. The allegation by plaintiffs that the Wortham Independent School District had agreed to and was willing to release the Tehuacana Valley District from any obligation under said contract was a mere ex-parte allegation on the part of plaintiffs. The Wortham Independent School District would not be bound by such allegation, but, regardless of any decree that might be entered in this suit, it could maintain a subsequent suit against the Tehuacana Valley School District for the enforcement of this contract." [132 S.W.2d 145.]

Point five asserts that appellee was getting the necessary gas for use in its Guidron Well No. 1. This was a disputed issue and the trial court's finding thereon is binding on this appeal, at least to the effect that such gas was probably not sufficient. The point is overruled.

What we have said makes it unnecessary for us to pass upon point six. The judgment below is reversed and cause remanded for further proceedings not inconsistent with this opinion.