BYRD IRR. CO. v. SMYTHE.

(Court of Civil Appeals of Texas. San Antonio. April 3, 1912. Rehearing Denied May 1, 1912.)

1. DISCOVERY (§ 8*)—INSPECTION OF PROPERTY.
A court of equity, by virtue of its ancillary powers, may grant orders for the inspection of property, where it is shown to be necessary for a proper exercise of judicial functions, or the attainment of justice.
[Ed. Note.—For other cases, see Discovery, Cent. Dig. §§ 8, 9; Dec. Dig. § 8.*]

2. EMINENT DOMAIN (§ 186*) — PROCEEDINGS TO TAKE PROPERTY — INSPECTION OF PROPERTY.
Under Rev. St. 1895, art. 3126, which provides that any corporation organized for irrigation purposes may obtain sites and rights of way over private lands, the damages to be assessed and paid for as in railroad cases, and article 4424, which provides that no railroad shall enter upon private property except for a lineal survey, until it shall agree with and pay the owner all damages, the court, in condemnation proceedings by an irrigation company, has no right to permit an inspection of the land sought to be condemned for the purpose of qualifying its own witnesses as to the value of the property, or for any purpose.
[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 500–504; Dec. Dig. § 186.*]

3. EMINENT DOMAIN (§ 1*) — NATURE AND SOURCE OF POWER.
Eminent domain is the right or power of a sovereign state to appropriate private property for the promotion of the general welfare. The power is an attribute of government and is inherent in it, and embraces all cases where the property of the individual is taken without his consent by such sovereign power.
[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 1, 2; Dec. Dig. § 1.*
For other definitions, see Words and Phrases, vol. 3, pp. 2362–2366; vol. 8, p. 7649.]

4. EMINENT DOMAIN (§ 167*) — PROCEEDINGS TO TAKE—STATUTORY EXERCISE OF POWER.
The right of eminent domain conferred by law on an individual or a corporation can be exercised only by the strictest adherence to the terms of the grant.
[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 451–456; Dec. Dig. § 167.*]

5. EMINENT DOMAIN (§ 252*)—APPELLATE JURISDICTION — PROCEEDINGS COUPLED WITH INJUNCTION.
Under Acts 31st Leg. (1st Ex. Sess.) c. 34, giving the Court of Civil Appeals jurisdiction of appeals from orders of the district and county courts relating to temporary injunctions, the Court of Civil Appeals will hear an appeal in an action by a company seeking to condemn land to compel the owner to permit it to inspect and survey the land, coupled with an application for temporary injunction.
[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 659; Dec. Dig. § 252.*]

Appeal from Uvalde County Court; T. M. Milam, Judge.

Action by the Byrd Irrigation Company against J. G. Smythe. Pending a proceeding to condemn land for irrigation purposes, petitioner's motion to compel defendant to permit petitioner to inspect and survey defendant's land was denied, and petitioner appeals. Affirmed.

T. F. Mangum and R. F. Townsend, both of San Antonio, and Love & Williams, of Uvalde, for appellant. Martin, Old & Martin, of Uvalde, for appellee.

FLY, J. This is an action, brought by appellant against the appellee, to compel the latter to permit the appellant and parties selected by it to have free access to his land "for the purpose of making an inspection, examination, and survey of the same, and that said Smythe be restrained from interfering with such persons while making such inspection, examination, or survey, under penalty of being held in contempt of this court." As leading up to that prayer, it was alleged that appellant is "an association of persons formed for the purpose of irrigation, as provided in chapter 2, tit. 60, of the Revised Statutes of the State of Texas"; that it had acquired the right to the unappropriated waters of the ordinary flow and underflow of Turkey creek and of the Nueces river; that it had filed a petition to condemn the right of way, dam site, and reservoir for irrigation purposes on the land of appellee, and that such condemnation proceedings were pending in the county court, in which this suit was instituted; that the commissioners appointed to assess the damages had heard the evidence of appellee as to the value of the land sought to be condemned, which showed that the land was of the value of $20 an acre, and that value was alleged to be excessive. Appellant alleged that the land sought to be condemned consisted of 6,000 or more acres of land in appellee's pasture, and that portions of it was "poor, rocky, and washed out in draws and gulleys, and a large part of the same covered with brush, so that the value of the same cannot be accurately determined, except by a survey, and estimate of the number of acres that are capable of being used for farming, and the number of acres that are only good for pasturage, and that the character of said land and the value of the same sought to be condemned and taken cannot be determined with any degree of accuracy or certainty without a survey and close inspection of the same." It was alleged that appellee would not permit appellant and parties selected by it to enter upon, inspect, examine, and survey the land, which they

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

wished to do in order to determine its value. "That petitioners know of no other persons who claim to be familiar with said lands, other than the witnesses of defendant, adduced on the trial before said commissioners, on which occasion they testified the value of said land was as above set out." The county judge placed the following order on the petition: "The foregoing motion is granted and hearing set for Feb. 9, 1912, at 2 o'clock p. m." The petition was filed, the order made, and the hearing had in vacation before the county judge, and after hearing testimony the relief sought by appellant was denied.

Appellee assailed the power and authority of a county judge in vacation to entertain any such action as is disclosed by the petition and try the same in vacation, but the plea was overruled and the cause proceeded to trial.

[1] Without entering into any extended discussion of the power of a court to grant an order of inspection, it may be stated that it has become common in the last few years for courts to grant orders for the inspection of property where it is shown to be necessary for a proper exercise of judicial functions, and the attainment of justice, whether exercised by virtue of an express statute to that effect, or by virtue of that power ancillary to the exercise of the duties of a court of equity. In the case of Montana Co. v. St. Louis Mining Co., 152 U. S. 160, 14 Sup. Ct. 506, 38 L. Ed. 398, the Supreme Court adopted this language used by a circuit court: "That a court of equity, having jurisdiction of the subject-matter of the action, has the power to enforce an order of this kind, will not be denied. And the propriety of exercising that power would seem to be clear indeed, in a case where, without it, the trial would be a silly farce." The Supreme Court further said: "To 'establish justice' is one of the objects of all social organizations, as well as one of the declared purposes of the federal Constitution, and if, to determine the exact measure of the rights of parties, it is necessary that a temporary invasion of either for purposes of inspection be had, surely the lesser evil of a temporary invasion of one's possession should yield to the higher good of establishing justice." This was not a case where the right of eminent domain was being exercised, and we have not seen any case in which it was so applied.

[2] No right of inspection in cases of eminent domain has been granted by statute in this state to any person, association, or corporation that may desire to condemn land; the only entry upon private property before it is paid for allowed by express statute being that given to railroad companies to enter upon real estate to make a lineal survey. Article 4424, Rev. Stats. And in article 3126, Revised Statutes, it is provided that any association or corporation organized for irrigation purposes may obtain right of way over private lands and also the land for dam sites and storage reservoirs, the damages for the same to be assessed and paid for as in railroad cases. In railroad cases it is provided: "No railroad company shall enter upon, except for a lineal survey, any real estate whatever, the same being private property, for the purpose of taking and condemning the same or any material thereon, for any purpose whatever, until said company shall agree with and pay the owner thereof all damages that may be caused to the lands and property of said owner by the condemnation of said real estate and property, and by the construction of such road." That statute applies to condemnation proceedings by irrigation companies, associations, or corporations, and no court would have the right or authority to grant permission to such company, association, or corporation to invade the sacred rights of property "for any purpose whatever," and especially for the purpose of making an inspection in order to qualify witnesses of applicant's own choosing to swear to matters with a view to lowering the value placed upon the land by legally qualified commissioners. It appears from the evidence that appellant, with its surveyor, had, for more than a year, free access to the land, for the purpose of making any and all surveys necessary for the purposes for which the association was organized. They cut roads through the brush and timber from 3 to 5 feet wide, felled trees, and ran from 30 to 40 miles of lines. Eight or ten men were engaged in the work, and they were permitted to do all they desired in connection with the land. The authority granted by the statute in condemnation proceedings has been fully exercised by appellant, and appellee's property should not be invaded again in order that witnesses may be qualified to lower the price that it will pay for appellee's property.

[3] Eminent domain is the right or power of a sovereign state to appropriate private property for the promotion of the general welfare. It embraces all cases where by authority of the sovereign power and for the public good the property of the individual is taken without his consent. The power of eminent domain is an attribute of government, and is inherent in it.

[4] Yet the property of the citizen can only be taken pursuant to the law of the land, and, when the high power of eminent domain is conferred by law on an individual or a corporation, the act of delegated sovereignty can be exercised only by the strictest adherence to the terms of the grant. "Where the state, by virtue of the right of eminent domain, authorizes the appropriation of private property, such a right can only be exercised under the protection of the legislative grant, and under the conditions and liabilities which the statute at-

taches to the grant." Railway v. Meador, 50 Tex. 77. The statute allows one entry before payment for it upon private property sought to be condemned, and no court has the authority to set aside that provision of the statute. The statute applies with peculiar force where free entry on the property has been exercised for more than a year. No more privileges should be granted appellant in connection with the property of a citizen of this commonwealth.

[5] This suit is accorded a hearing in this court because there was coupled with it an application to the county judge for a temporary injunction. The county judge had the right and authority to hear the application in vacation. By the Acts of 1909, p. 354, judges of the district and county courts are authorized, either in term time or vacation, to hear and determine all applications for writs of injunction, and any party or parties to any civil suit wherein a temporary injunction may be granted, refused, or dissolved may appeal from the order granting, refusing, or dissolving the injunction to the Court of Civil Appeals.

The judgment is affirmed.