Samuel Lee LEWIS et al., Appellants,

v.

TEXAS POWER & LIGHT CO., Appellee.

No. 14886.

Court of Civil Appeals of Texas.

Dallas.

Feb. 25, 1955.

Rehearing Denied March 25, 1955.

Samuel L. Lewis, Dwight L. McCormack, Dallas, for appellants.

J. E. Abernathy, McKinney, for appellee.

DIXON, Chief Justice.

This is an appeal from a temporary injunction restraining appellants Samuel Lee Lewis, Ruth Lewis Baber and her husband Harvey Earl Baber (1) from interfering, molesting, or preventing appellee Texas Power & Light Company from sending its survey crews upon the property of appellants and (2) from removing or in any way tampering with the stakes and markers placed on said property by the survey crews.

Appellants did not file a supersedeas bond. Consequently the temporary injunction has not been suspended pending this appeal. Some time ago, under protection of the injunction, appellee sent its crews onto appellants' property and their survey has now been completed. Under the circumstances we would declare the controversy moot and dismiss the appeal were it not for the second part of the injunction order, which is still a live issue. We shall therefore proceed to a consideration of the appeal on its merits.

Appellee asserts that this is not a condemnation proceeding. It is an injunction suit filed originally in the District Court of Collin County, Texas. It is our understanding that condemnation proceedings have now been instituted through the County Judge of Collin County, but they were not instituted until after appellee had completed its survey and thus obtained an adequate description of the real property to be condemned. Appellee's contention is that it could not institute condemnation proceedings until it had obtained an adequate description; and that as a matter of law it had a right to go onto appellants' property beforehand in order to make the survey

necessary to obtaining a sufficient description for condemnation proceedings.

The only witness who testified at the hearing was appellee's project engineer for transmission lines, William J. Davis, an electrical engineer. Material parts of his testimony will hereinafter be summarized.

Appellee is a public utility company with authority under Art. 1436, V.A.C.S., to exercise the right of eminent domain. It furnishes electricity to various communities in fifty-two counties in the State of Texas. Portions of the area in question are also served to some extent by rural electric associations and by the Community Public Service Company.

In May 1955 appellee expects to finish construction, now under way, of its new steam electric generating plant at Prosper, Collin County, Texas, with a capacity of 143,000 kilowatts, and transmission lines capable of carrying 138,000 volts. The purpose of the new generating plant for the present is to furnish additional electricity to the Dallas-Fort Worth area to the south, and to the Sherman, Denison, Gainesville, Bonham area to the north. Later it will be expected to serve the McKinney and Denton areas too. To accomplish this purpose appellee is about to construct two transmission lines, one running south from the Prosper generating plant, the other north to its Payne substation in Grayson County. It is the line running north which is the subject matter of this controversy.

The Payne substation in Grayson County is a redistribution center for electricity now generated in appellee's plants in Waco, McLennan County, Texas and Trinidad, Henderson County, Texas. It also helps distribute 40,000 kilowatts of electricity which appellee purchases from a government-owned 80,000 kilowatt capacity generating plant at Texhoma, the other 40,000 kilowatts from this plant being sold by the Government to Oklahoma consumers.

The line involved in this controversy, running about thirty miles from the Prosper generating plant to the Payne substation, will, unless plans are changed, pass over and across appellants' 300-acre farm. Appellee therefore asked for, but was denied permission to go onto appellants' land to survey and place stakes marking the boundaries of an easement about 100 feet wide.

County maps and aerial photographs have been used by appellee, but they are not sufficiently accurate to use as a basis in preparing an adequate description of the desired easement. That is why, according to appellee, a survey is necessary. Until a survey is available it is impossible to say exactly where the line will go, or even to say for certain that the line will cross appellants' property. For sometimes a survey will reveal for the first time obstacles in the path, or problems arising out of the contour of the land, which require a change in the planned course of the line.

At the present time there is enough electricity from available sources coming into the Payne substation to enable appellee adequately to serve its customers. However it is anticipated that with only the present amount of electricity available, the Payne substation will not be able in the future to satisfy the demands made on it, with the result that the users served by the substation will suffer from "brownouts," or curtailments such as were experienced during the war due to power shortage. The witness Davis was not able to say exactly when this point would be reached, but estimated that it would be in about four years even if no new customers came into the area. Existing customers increase their power usage about ten to fifteen percent per year. With the continued development of the area as a result of expected new industries and customers coming into the area, additional electricity will be needed much sooner. And the utility under its franchise is required to have electricity available to consumers that want it. Appellee's commercial department, along with local chambers of commerce and other agencies, is seeking to further the development of the area by attracting new industries and customers.

Appellants' brief presents six points on appeal; (1) The District Court did not

have jurisdiction of the cause of action; (2) exceptions should have been sustained attacking the sufficiency of appellee's petition; (3) the temporary injunction destroys the status quo of the parties; (4) appellee failed to allege or prove offer of payment for the taking sought; or (5) to make a deposit in court as a condition precedent; and (6) failure to prove with certainty that the transmission line will pass over appellants' land. However the controlling question involved in this case upon which the injunction must stand or fall is whether appellee is authorized under the law to enter upon appellants' property to make a preliminary survey with a view to the later acquisition of easement rights for the construction of its transmission line.

Our Legislature has expressly and clearly granted such authority to magnetic telegraph companies and to railroad companies. Arts. 1417 and 6318, V.A.C.S. The first named statute has been interpreted to include telephone companies. San Antonio & A. P. R. Co. v. Southwestern Tel. & Tel. Co., 93 Tex. 313, 55 S.W. 117, 49 L.R.A. 459. In our opinion electric current and power companies are also given statutory authority to exercise such power under a proper interpretation of Art. 1436, V.A.C.S.

The last named article provides that "Such corporation shall have the right and power to *enter upon, condemn and appropriate* the lands, * * * of any person * * *." (Emphasis supplied.) It seems to us that the statute thus grants two separate and distinct powers: (1) to enter upon, and (2) to condemn and appropriate. It will be observed that the words "enter upon" precede the words "condemn and appropriate," and are the same words used in Arts. 1417 and 6318, V.A.C.S., in expressly granting telegraph and railroad companies the right to go upon lands for the purpose of making preliminary surveys with a view to selecting lands to be acquired. Surely it cannot reasonably be contended that the Legislature felt it necessary to grant a condemning authority the right to enter upon land *after* it had condemned and appropriated said

land. To so hold would be to assume that the words "enter upon" as used by the Legislature are meaningless surplusage. In our opinion the Legislature by the language used in Art. 1436, V.A.C.S., recognized the necessity of preliminary surveys and intended to grant authority to electric current and power companies to make such surveys.

The views above expressed are supported by respected authorities. Our own Supreme Court in commenting on Art. 6318, V.A.C.S., above cited, pertaining to railroads has said, "That a railroad company should have the right to designate its right of way and to condemn property therefor, * * *, would seem almost a necessity. * * *" Rainey v. Red River, T. & S. R. Co., 99 Tex. 276, 89 S.W. 768 at page 771, 3 L.R.A.,N.S., 590. The Supreme Court of Wisconsin has said, "It would seem that a railroad must, of necessity, be permitted to go upon lands for the purpose of surveying and locating the line of its road; for, until the line is located, condemnation is impossible." Lyon v. Green Bay & Minn. R. Co., 42 Wis. 538 at page 544. In 29 C.J.S., Eminent Domain, § 226 a, p. 1179, it is said, "It has been stated broadly that the right of entry on property, in good faith, for the purpose of making a preliminary survey and investigation with the view of condemnation is a necessary incident of the right to condemn, * * *." See also Ward v. Toledo & C. R. Co., 1 Ohio Dec. 553; Steuart v. Baltimore, 7 Md. 500; 29 A.L.R. 1409.

Appellants in their first point take the position that this is a condemnation suit of which the County Court has sole jurisdiction. In our opinion though it is a type of suit which may often be followed by condemnation proceedings, it is not itself a condemnation proceeding or suit. It is a suit to enforce the right of appellee to go upon the land of appellant for a preliminary survey prior to the acquisition of easement rights with a view to construction of its line. The exercise of such right does not necessarily mean that condemnation proceedings will ever follow. It is

common knowledge that companies with the right of eminent domain often acquire right-of-way property by agreement and amicable purchase. It is even possible in some instances, as shown by the testimony in this case, that the survey could reveal obstacles which would compel a change in the planned course of the line. In any event the survey takes place before condemnation proceedings are instituted. The issue presented in this case can be adjudicated only in a court of general jurisdiction. The County Court does indeed have exclusive jurisdiction of condemnation suits as such. But its jurisdiction does not attach and the proceedings do not become judicial causes of action until after the County Judge in his administrative capacity has appointed commissioners, the commissioners have made their report, and appeal has been taken therefrom. City of Big Spring v. Garlington, Tex.Civ.App., 88 S.W.2d 1095; Fitzgerald v. City of Dallas, Tex.Civ.App., 34 S.W.2d 682; 16 Tex.Jur. 716. We overrule appellants' first point on appeal.

■ Appellants assert that the trial court erred in overruling their special exceptions attacking the sufficiency of appellee's pleadings on the grounds that the pleadings do not allege irreparable damages, inadequate remedy at law, or public need or necessity. Consideration of space forbids our quoting at length from the pleadings. Suffice it to say: In paragraph II of its petition appellee alleges that at considerable expense it has constructed its Prosper generating plant, and that to distribute electricity there generated, it is necessary to construct transmission lines; in paragraph III appellee alleges that it is in process of acquiring right-of-ways, and it is necessary to make surveys of available property, and that if it is not afforded opportunities to do so, it will result in irreparable damage to appellee; in paragraph V that appellants have refused to allow appellee to make such survey; in paragraph VI that it does not have an adequate remedy at law, because if denied the survey it will be impossible (1) to prepare a deed containing a sufficient description, or (2) to

prepare an adequate petition if it is necessary to condemn the property. We believe the allegations are sufficient to withstand appellants' special exceptions. We over rule appellants' second point.

■ Appellants say that the order granting the temporary injunction should not be allowed to stand because it in effect grants all the relief appellee might obtain in a trial on the merits and thereby changes the status quo of the parties. Ordinarily the principle asserted by appellants is a proper test in weighing the propriety of a temporary injunction. But we believe that under the facts presented in this case appellants' position is untenable for two reasons.

■ In the first place if appellee has the right under our statute to enter onto appellants' property to make its preliminary survey, and we have held that it has, the status quo was one of action, not of rest. Under such circumstances even mandatory injunctions are upheld. We quote from the opinion of this Court in Texas Pipe Line Co. v. Burton Drilling Co., Tex.Civ. App., 54 S.W.2d 190 at page 193: "* * * appellant contends that the trial court erred in issuing the writ in question because its effect is to award in advance to appellee all relief it could obtain on final trial. We have heretofore seen that the status quo in actions of this nature 'is a condition not of rest but of action, and the condition of rest is what will inflict the irreparable injury complained of, in which circumstances courts of equity may issue mandatory writs before the case is heard on its merits.' * * *" See also Oil Lease & Royalty Syndicate v. Beeler, Tex.Civ.App., 217 S.W. 1054 at page 1058; City of Amarillo v. Garwood, Tex.Civ.App., 63 S.W. 2d 888 at page 890; Hunt v. Clifford H. Brown & Co., Tex.Civ.App., 239 S.W.2d 178.

■ In the second place, the trial court no doubt weighed the relative convenience and inconvenience and the comparative injuries to the parties and to the public which would arise from the granting or

refusing of this temporary injunction, and found the equities to lie with appellee. There can be little if any doubt that appellee under the facts shown in this record, is entitled to acquire easement rights over appellants' land, either by voluntary conveyance, or by condemnation. That being so, the injury suffered by appellants from the survey will be small compared to the injury suffered by appellee and the public if appellee were denied the right to proceed with its preliminary survey. The Prosper generating plant, built at great expense, is expected to be ready in May 1955. The continuing growth and development in recent years of the area it will serve through the contemplated transmission line are matters of common knowledge. It is the duty of appellee as a supplier of light and power to the public to make timely preparation to meet such increased demands on its facilities. It would be reprehensible of appellee to wait until "brown-outs" occur due to inadequate facilities before bestirring itself to expand and increase its plant and equipment to serve the public needs. In our opinion the trial court, after weighing the equities did not abuse its discretion in granting the temporary injunction. Texas Pipe Line Co. v. Burton Drilling Co., Tex.Civ.App., 54 S.W.2d 190 at page 194; Jeff Chaison Town-Site Co. v. McFaddin, etc., 56 Tex.Civ.App. 611, 121 S.W. 716 at page 721; 24 Tex.Jur. 136, 138. We overrule appellants' third point.

In their points four and five appellants say that appellee has failed to offer payment of damages arising from its preliminary survey, or to deposit the probable amount of damages in court as required by the Constitution for the taking of property under eminent domain. Appellee acknowledges that it must pay for any damage to appellants' crops or other property by reason of the survey. Unquestionably appellee is liable for any such damage. However we do not believe that a money deposit of the estimated amount of the damages is required beforehand. We have already held that this suit is not a condemnation proceeding. We also hold that it is not a "taking" of appellants' property as contemplated by Art. I, § 17, of the Constitution of Texas, Vernon's Ann.St.

We find no Texas case on the point, but it has been passed on in other jurisdictions. The cases are annotated in 29 A.L.R. 1409, from which we quote: "An entry on private property for the sole purpose of making the necessary explorations for location is not taking it; the right remains in the owner as fully as before; no permanent injury can be sustained; nothing is taken from him; nothing is given to the company." And the Supreme Court of Maryland has said: "The constitutional prohibition against taking private property for public use until compensation is first paid or tendered means taking the property from the owner and actually applying it to the use of the public. It does not mean the preliminary measures necessary in such cases. To hold that compensation must be paid or tendered before a survey should be made, or other preparatory steps taken, would be a construction of the constitution not required by its language, or necessary for the protection of private rights." Steuart v. Baltimore, 7 Md. 500. We overrule appellants' fourth and fifth points.

Lastly appellants say that appellee failed to plead and prove with clarity and certainty that the power transmission line will pass over the property of appellants. We see no merit in appellants' contention. The record shows that the survey crews had already begun work and were approaching the south line of appellants' property at the time of the trial. Davis, appellee's project engineer, testified as to the approximate points where the desired easement will enter appellants' property from the north and from the south. The only doubt that it will pass over appellants' property arises from the fact, as testified to by Davis, that surveys sometimes, though very rarely, reveal for the first time obstacles and other problems which compel a change in the planned course of a line. We overrule appellants' sixth point.

The judgment of the trial court is affirmed.