**J. M. HICKS et al., Appellants,**

v.

**TEXAS MUNICIPAL POWER AGENCY, Appellee.**

**No. 1581.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

March 16, 1977.

Rehearings Denied April 6, 1977.

Karl C. Hoppess, Houston, Coulter T. Hoppess, Bryan, for appellants.

Albert Witcher, Roy L. Barrett, Naman, Howell, Smith & Chase, Waco, for appellee.

J. CURTISS BROWN, Chief Justice.

This is an appeal from the granting of a temporary injunction. The principal question presented is the nature and extent of condemnation power granted a municipal power agency under Tex.Rev.Civ.Stat.Ann. art. 1435a (Supp.1976). J. M. Hicks and others (appellants) brought suit against Texas Municipal Power Agency (appellee) to enjoin it from cutting survey lines, drilling core holes and otherwise invading appellants' property. Appellee is an incorporated power agency created by the cities of Bryan, Denton, Garland and Greenville pursuant to article 1435a. Its purpose is the development of facilities to be used in generating electric power. By resolution of the Board of Directors of this Agency, a proposed plant site in Grimes County for a lignite fueled generating plant was adopted. The activities sought to be enjoined are to be made in contemplation of building a railroad spur approximately 8½ miles from this plant site to the Burlington Railroad. The spur track is to pass through appellants' property parallel to and approximately 60 feet off of an existing county road.

In response to appellants' original petition, appellee answered and counterclaimed seeking to have appellants enjoined from interfering with these operations. The district court granted the temporary injunction, and appellants have appealed that order to this court. This court granted appellee a temporary injunction to preserve our jurisdiction of the subject matter of the appeal by ordering appellee to refrain from entering onto appellants' property.

Appellee asserts that article 1435a grants to it the power of eminent domain to condemn all property necessary for the construction and operation of its facilities which, they allege, includes the proposed railroad spur. The claimed purpose of the spur is to transport heavy equipment and building materials during the construction phase, and later to haul approximately 1,000 tons of limestone per day to the plant for use in a pollution control scrubber system required by both state and federal regulation. The proposed survey of appellants' land will entail surveying its boundary lines, opening gaps or building gates through appellants' fences where necessary, surveying the most advantageous route for the spur, performing core drilling operations to determine the composition of the subsurface, and clearing all obstructions and timber by bulldozer for a 12 foot wide path to bring in the equipment necessary to conduct the core drilling and survey operations.

Appellee admits responsibility "for all damages" caused by such conduct; however, the extent of such concession is not clear. We do not know whether appellee would pay the reasonable value of mineral information obtained from the survey or for the loss sustained if the land is determined to be valueless for mineral development. For the purpose of this opinion we will assume that appellee's concession covers all damages of every kind that may be sustained.

Article 1435a governs public or private entities such as cities and towns, corporations and conservation and reclamation districts which engage in the generation, transmission or distribution of electric energy. It authorizes such entities to join together as co-tenants or co-owners in the construction and operation of electric generating plants, transmission lines and "oth-

er electric facilities." Section 4a(a) of this Act specifically provides for the creation of a municipal power agency such as appellee.

In order to more readily accomplish the purposes of this Act, two or more public entities by concurrent ordinances may create a joint powers agency to be known as a municipal power agency, without taxing power, as a separate municipal corporation, a political subdivision of the state, and body politic and corporate, to have and exercise all of the powers which are by Chapter 10 of Title 28, Revised Civil Statutes of Texas, 1925, as amended, and this Act, conferred upon a public entity or entities, provided that such agency shall not be authorized to engage in any utility business other than generation, transmission, and sale or exchange of electric energy to the participating public entities and to private entities who are joint owners with the agency of an electric generating facility located within the state.

The right of eminent domain for condemnation of private property is expressly granted to the participating public and private entities under section 4(2).

Each participating public entity and each participating private entity shall have the right and power to acquire, for the use and benefit of all participating entities, by purchase or through the exercise of the power of eminent domain, lands, easements, and properties for the purpose of jointly owned electric facilities, and shall have the power to transfer or convey such lands, easements, and properties, or interest therein, or otherwise to cause such lands, easements, and properties, or interests therein, to become vested in other participating entities to the extent and in the manner agreed between the participating entities. In all cases in which a participating entity exercises the right and power of eminent domain conferred hereby, it shall be controlled by the law governing the condemnation of property by incorporated cities and towns in this state, and the right and

power of eminent domain hereby conferred shall include the right and power to take the fee title in land so condemned, except that no participating entity has the right or power to take by the exercise of the power of eminent domain any electric facilities, or interest therein, belonging to any other entity.

Moreover, section 4a(a) expressly delegates to a municipal power agency, as distinguished from a participating entity, all powers conferred upon a public entity by Chapter 10, Title 28 of our Revised Civil Statutes which includes condemnation authority. Title 28 basically establishes the powers of cities and towns. Chapter 10 specifically deals with the powers necessary for cities and towns to own and operate public utilities. Article 1109b of this chapter provides:

Incorporated cities and towns shall have the power to appropriate private property for public purposes whenever the governing authorities shall deem it necessary and to take any private property within or without the city limits for any of the following purposes, to wit:

To have the power to appropriate private property for public purposes whenever the governing authorities shall deem it necessary and to take any private property within or without the city limits for any of the following purposes, to wit: City halls, police stations, jails, calaboose, fire stations, libraries, school houses, high school buildings, academies, hospitals, sanitariums, auditoriums, market houses, reformatories, abattoirs, railroad terminals, docks, wharves, warehouses, ferries, ferry landings, elevators, loading and unloading devices, shipping facilities, piers, streets, alleys, parks, highways, boulevards, speedways, playgrounds, sewer systems, storm sewers, sewage disposal plants, drains, filtering beds and emptying grounds for sewer systems, reservoirs, water sheds, water supply sources, wells, water and electric light systems, gas plants, cemeteries, crematories, prison farms, and to acquire lands with[1] and

1. Probably should read "within".

without the city for any other municipal purposes that may be deemed advisable.

. . . That, in all cases where the city seeks to exercise the power of eminent domain, it shall be controlled, as nearly as practicable, by the law governing the condemnation of property of railroad corporations in this State, the city taking the position of the railroad corporations in any such case; that the power of eminent domain hereby conferred shall include the right of the governing authority, when so expressed, to take the fee in the lands so condemned and such power and authority shall include the right to condemn public property for such purposes.

Tex.Rev.Civ.Stat.Ann. art. 1109b (1963). *See also* Tex.Rev.Civ.Stat.Ann. art. 1107 (1963).

█ Appellants argue by their first point of error that appellee has no right to conduct surveys for the purpose of building a railroad spur because it is not authorized to own and operate a railroad. Thus, they contend that appellee cannot use its condemnation power to build the spur. In support of their position, appellants point to the limitation provided in section 4a(a).

[P]rovided that such agency shall not be authorized to engage in any utility business other than generation, transmission, and sale or exchange of electric energy to the participating public entities and to private entities who are joint owners with the agency of an electric generating facility located within the state.

It is appellants' position that a railroad is a "utility business" as the term is used in section 4a(a). While it is true that the operation of a railroad is, in most cases, deemed a public utility subject to the regulation by the Railroad Commission, Tex. Rev.Civ.Stat.Ann. art. 6445 (1926), we do not believe that the legislative intent behind this limitation in section 4a(a) was to exclude appellee's use of a railroad for the sole purpose of transporting materials necessary for the operation of the plant. It is clear that this provision was intended to prohibit a power agency from providing any

utility service to the *public* other than the generation of electric power and energy. In this regard where the legislature has not defined a particular word or phrase, the ordinary meaning given such words or phrases will control. *Eddins-Walcher Butane Co. v. Calvert,* 156 Tex. 587, 298 S.W.2d 93, 96 (Tex.Sup.1957). The ordinary meaning given the word "utility," and as specifically defined in other statutes, is that of a service such as supplying water, gas or electricity to the general *public. See* Tex. Rev.Civ.Stat.Ann. art. 1446a (1962), and art. 1446c, § 3(c)(4) (Supp.1976). Appellee would no doubt be prohibited from operating a railroad for the use of the general public; however, where the operation of this spur is for the limited purpose of supplying the plant with needed materials and totally incidental thereto, it cannot be considered a "utility business" as contemplated in section 4a(a). *Cf.* Tex.Rev.Civ.Stat.Ann. art. 1446c, § 3(c)(4) (Supp.1976).

█ Appellants also point to article 1435a, section 1 which authorizes appellee to own and operate "electric generating units and plants, electric transmission lines, and other electric facilities . . . ." Section 2(4) defines "electric facilities" as

any facilities necessary or incidental to the generation of electric power and energy or the transmission thereof, including electric generating units, electric generating plants, electric transmission lines, plant sites, rights-of-way, and real and personal property and equipment and rights of every kind useful in connection therewith.

They contend that the operation of a railroad spur does not fall within this definition of "electric facilities." Appellee, on the other hand, argues that the proposed railroad spur is "necessary" and "incidental" to its plant for generation of electric power. Statutes granting the power of eminent domain are strictly construed in favor of the land owner and against the governing body exercising power. *Burch v. City of San Antonio,* 518 S.W.2d 540, 544–45 (Tex. Sup.1975); *Coastal States Gas Producing Co. v. Pate,* 158 Tex. 171, 309 S.W.2d 828,

831 (Tex.Sup.1958). In *Coastal States,* however, the supreme court stated that

> [s]trict construction is not, however, the exact converse of liberal construction, for it does not require that the words of a statute be given the narrowest meaning of which they are susceptible. The language used by the Legislature may be accorded a full meaning that will carry out its manifest purpose and intention in enacting the statute, but the operation of the law will then be confined to cases which plainly fall within its terms as well as its spirit and purpose.

*Coastal States Gas Producing Co. v. Pate,* 309 S.W.2d at 831; *accord, Burch v. City of San Antonio,* 518 S.W.2d at 545.

Following these rules of construction, we observe, at the outset, that article 1435a does not *expressly* authorize a power agency to construct and operate a railroad spur. This right, if it exists at all, must be implied from the language in the statute itself as an incidental and necessary function to the operation of appellee's electric generating plant. The term "electric facilities" is defined in section 2(4) of article 1435a as "any facilities necessary or incidental to generation of electric power . . . ." These facilities include "real and personal property and equipment and rights of every kind useful in connection therewith."

The statutory language in article 1109b of title 28, chapter 10 which vests eminent domain power in incorporated cities and towns and which is specifically adopted by article 1435a, section 4a(a) must also be considered. That article lists specific purposes including "water and electric light systems" for which the eminent domain power can be exercised. This listing is followed by the broad language: "and to acquire lands with and without the city for any other municipal purposes that may be deemed advisable." Several court decisions have construed similar language to permit condemnation of property for purposes not expressly authorized by statute. *See Snellen v. Brazoria County,* 224 S.W.2d 305 (Tex.Civ.App.—Galveston 1949, writ ref'd n. r. e.); *Weyel v. Lower Colorado River Authority,* 121 S.W.2d 1032 (Tex.Civ.App.— Austin 1938, writ ref'd); *cf. Coastal States Gas Producing Co. v. Pate,* 158 Tex. 171, 309 S.W.2d 828 (Tex.Sup.1958). We recognize the cases cited by appellant in which water and conservation districts in exercising their eminent domain authority to construct lakes cannot condemn contiguous land for purposes of building park and recreational facilities to be leased to private individuals. In these cases the courts found such purposes to be private in nature and, therefore, not statutorily authorized either expressly or by necessary implication. *Franklin County Water Dist. v. Majors,* 476 S.W.2d 371 (Tex.Civ.App.—Texarkana 1972, writ ref'd n. r. e.); *City of Wichita Falls v. Thompson,* 431 S.W.2d 909 (Tex.Civ.App.— Fort Worth 1968, writ ref'd n. r. e.); *Brazos River Conservation & Reclamation Dist. v. Harmon,* 178 S.W.2d 281 (Tex.Civ.App.— Eastland 1944, writ ref'd w. o. m.).

In this case there was testimony at the hearing on the motions for temporary injunctions by appellee's project manager concerning the necessity for a railroad spur. He testified that the spur would be used to haul heavy construction equipment and materials to the plant initially and thereafter to carry limestone for a scrubber system in compliance with certain state and federal environmental regulations. There is no evidence in this record that the determination by appellee of the necessity for a spur passing through appellants' property was arbitrary, capricious, fraudulent or an abuse of discretion. *See Housing Authority of City of Dallas v. Higginbotham,* 135 Tex. 158, 143 S.W.2d 79 (Tex.Sup.1940); *Rainey v. Red River, T. & S. Ry.,* 99 Tex. 276, 89 S.W. 768 (Tex.Sup.1905); *Franklin County Water Dist. v. Majors,* 476 S.W.2d 371 (Tex.Civ.App.—Texarkana 1972, writ ref'd n. r. e.); *Luby v. City of Dallas,* 396 S.W.2d 192 (Tex.Civ.App.—Dallas 1965, writ ref'd n. r. e.).

■ It should be noted that the narrow issue presented on this appeal is whether the trial court abused its discretion in granting appellee's temporary injunction to conduct its survey. The record is silent as

to the reason that Burlington Railroad or some other common carrier by rail could not provide the necessary rail service in an expeditious and economical manner. In the event that condemnation proceedings are ultimately filed, an appropriate forum would be presented for decision of this question, if it is raised, as to whether the determination to build the spur in question was the result of fraud, bad faith or clear abuse of discretion. *See City of Houston v. Hamons,* 496 S.W.2d 692 (Tex.Civ.App.— Houston [14th Dist.] 1973, no writ). Under the facts before us, however, we hold that the trial court did not abuse its discretion in finding that the construction of the railroad spur was a necessary and incidental function to the operation of the generating plant.

■■ By appellants' third point of error they contend that appellee's right to build a railroad spur can exist only under the statutes governing corporations and others which build and operate railroads from mines or manufacturing plants to the nearest commercial railroad line. Tex.Rev.Civ. Stat.Ann. art. 6550 (1926), and art. 6550a1 (Supp.1976). These statutes grant such corporations the power to condemn land to build their railroad provided that they declare themselves a common carrier and, thus, bring themselves under the regulation of the Railroad Commission. We agree with appellee that these statutes do not control its proposed operation. The purpose of these statutes is to vest necessary condemnation power in corporations which because of their private, as opposed to public, nature would not ordinarily have such power. In contrast, appellee has been expressly designated as a "municipal corporation, a political subdivision of the state, and body politic and corporate . . .." Moreover, it has been expressly granted the power of condemnation.

■ Appellants' fourth and fifth points of error attack appellee's alleged right to conduct preliminary surveys, including core drilling, before building the railroad spur and instituting condemnation proceedings. Generally, courts have upheld the right of a

governing body vested with condemnation power to enter onto lands for the purpose of a preliminary survey either by express statutory grant or by implication. *See Rainey v. Red River, T. & S. Ry.,* 99 Tex. 276, 89 S.W. 768 (Tex.Sup.1905); *Puryear v. Red River Authority of Texas,* 383 S.W.2d 818 (Tex.Civ.App.—Amarillo 1964, writ ref'd n. r. e.); *Lewis v. Texas Power & Light Co.,* 276 S.W.2d 950 (Tex.Civ.App.—Dallas 1955, writ ref'd n. r. e.); Restatement (Second) of Torts § 211, comment c at 399 (1965); Annot., 29 A.L.R.3d 1104 (1970). Neither article 1435a nor article 1109b expressly grants appellee the power to a preliminary survey prior to condemnation; however, following the rationale in *Lewis v. Texas Power & Light Co., supra,* we feel that appellee's right to build a railroad spur necessarily implies the right to survey. We also agree with appellee that its right to survey is governed by Tex.Rev.Civ.Stat.Ann. art. 6318 (1926) which authorizes railroad corporations to conduct surveys. The application of this article can be implied from the language in article 1109b which states that

in all cases where the city seeks to exercise the power of eminent domain, it shall be controlled, as nearly as practicable, by the law governing the condemnation of property of railroad corporations in this State, the city taking the position of the railroad corporations in any such case · · · ·

Tex.Rev.Civ.Stat.Ann. art. 1109b (1963).

■ We do not agree, however, that appellee's right to survey necessarily includes the right to conduct core drilling operations. Article 6318 provides:

Every railroad corporation shall have the right to cause such examination and *survey* for its proposed railway to be made as may be necessary to the selection of the most advantageous route, and for such purpose may enter upon the lands or waters of any person or corporation, but subject to responsibility for all damages that may be occasioned thereby. [Emphasis added.]

In construing the legislative intent in using the word "survey," we may look to the title

of the statute which is captioned "Lineal survey." *See Southwestern Bell Telephone Co. v. Houston Independent School Dist.,* 397 S.W.2d 419, 421–22 (Tex.Sup.1965); *Trawalter v. Schaefer,* 142 Tex. 521, 179 S.W.2d 765, 767 (Tex.Sup.1944). The rules of statutory construction also permit reference to other statutes which are in *pari materia* and deal with the same or similar subject matter. *See Jessen Associates, Inc. v. Bullock,* 531 S.W.2d 593, 600 (Tex.Sup. 1975); *Stanford v. Butler,* 142 Tex. 692, 181 S.W.2d 269, 274 (Tex.Sup.1944); *Arcola Sugar Mills Co. v. Houston Lighting & Power Co.,* 153 S.W.2d 628, 632–33 (Tex.Civ. App.-Galveston 1941, writ ref'd w. o. m.). With this rule in mind we examine Tex. Rev.Civ.Stat.Ann. art. 6337 (1926).

[N]o railroad company shall enter upon, *except for a lineal survey,* any real estate whatever, the same being private property, for the purpose of taking and condemning the same, or any material thereon, for any purpose whatever, until the said company shall agree with and pay the owner thereof all damages that may be caused to the lands and property of said owner by the condemnation of said real estate and property, and by the construction of such road. [Emphasis added.]

It is clear, then, that the legislative intent behind these two acts was to limit a railroad company to a "lineal survey." Appellee has cited *Puryear v. Red River Authority of Texas, supra,* in support of its argument that the right to survey may include by necessary implication the right to conduct core drilling operations. That case, however, is distinguishable on its facts. In *Puryear,* the pertinent statute authorizing the Red River Authority to survey was Tex. Rev.Civ.Stat.Ann. art. 7880–49 (1954), governing water control and improvement districts, and the survey was in preparation for constructing a dam. In this case, however, the controlling statute is article 6318 governing the construction of railroads. Under this statute we think it apparent that it was the legislature's intent to limit railroads to a lineal survey. We sustain appellants' fifth point of error.

In their sixth point of error appellants complain that the temporary injunction was overly broad as to area and location and provided for no time limitation. We sustain these points in part since we believe that appellee should proceed with reasonable dispatch and should be confined to the general area designated by the testimony in the record. The judgment below is, therefore, reversed and rendered in part and modified and affirmed in part.

Insofar as the judgment of the court below permits "drilling all such holes into and through the surface and sub-surface of said property for the purpose of determining the composition of the strata and sub-strata thereof and the underground water level . . ." and "drill such holes" and "making water level and other readings in said holes on days subsequent to the drillings thereof, plugging said holes . . .," said judgment is hereby reversed and judgment is rendered enjoining appellee from such specific activities. Otherwise, the judgment of the court is modified so that the temporary injunction granted appellee is to remain effective 45 days after this judgment becomes final, and the judgment is also modified so as to permit the activities authorized to be conducted within a 150 foot area of either side of the line shown on plaintiffs' exhibit 3. Our temporary injunction heretofore entered to preserve our jurisdiction will remain in effect until this judgment becomes final. Cost of this appeal is assessed one-half against appellants and one-half against appellee.

Reversed and rendered in part; modified and affirmed in part.