COASTAL MARINE SERVICE OF
TEXAS, INC., Appellant,

v.

CITY OF PORT NECHES, Appellee.

No. 09–99–431 CV.

Court of Appeals of Texas,
Beaumont.

Submitted Jan. 20, 2000.

Decided March 2, 2000.

Karl C. Hoppess, Daniel P. Meanor, Karl C. Hoppess & Associates, Houston, Randal Cashiola, Chambers Templeton Cashiola, LLP, Beaumont, for appellant.

H.P. Wright, Marcus A. Pitre, Wright & Pitre, Port Neches, for appellee.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

DON BURGESS, Justice.

Coastal Marine Service of Texas, Inc. ("Coastal") appeals from an order granting the City of Port Neches ("City") a temporary injunction requiring Coastal to refrain from interfering with the City's performance of an initial Phase I environmental site assessment. Coastal owns approximately seventeen acres of land located within the city limits of the City. In 1997, the City directed its staff to acquire Coastal's property for park purposes, using the power to eminent domain, if necessary. The City had the property appraised and, based on its appraisal, made Coastal an offer to purchase, prior to instituting condemnation proceedings. Coastal also had the property appraised and, based on its appraisal, offered to sell the property to the City without the necessity of litigation. However, the parties could not agree on a purchase price. Although Coastal has agreed to allow the City to conduct a lineal survey, the City has not done so because Coastal would not also permit the environmental testing. On June 22, 1999, the City filed its original petition seeking injunctive relief against Coastal, and after a hearing on July 23, 1999, the court granted a temporary injunction.

On appeal, Coastal presents one main issue, which it divides into and argues in three parts:

In addition to a lineal survey, can the City, subsequent to its determination to condemn property and subsequent to its negotiations with the landowner but prior to it filing a petition in condemnation and tendering payment, occupy the landowner's property in order to conduct environmental studies, tests and surveys, without a statutory grant of authority?

Is there a statutory authority for the issuance of a writ of temporary mandatory injunction to conduct a Phase I environmental study prior to condemnation?

Did the City meet the required elements for the issuance of a temporary injunction?

Has the trial court issued an improper advisory opinion?

 While this is a suit for temporary injunction and not a condemnation proceeding, "it is intimately connected to a contemplated condemnation proceeding." *See Hailey v. Texas–New Mexico Power Co.,* 757 S.W.2d 833, 834–35 (Tex.App.— Waco 1988, writ dism'd w.o.j.). In condemnation proceedings, the rule that statutory requirements are to be strictly followed is for the "benefit of the landowner." *City of Bryan v. Moehlman,* 155 Tex. 45, 282 S.W.2d 687, 690 (Tex.1955); *Hailey,* 757 S.W.2d at 835. But as the Texas Supreme Court further explained in another condemnation case,

[s]trict construction is not, however, the exact converse of liberal construction, for it does not require that the words of a statute be given the narrowest meaning of which they are susceptible. The language used by the Legislature may be accorded a full meaning that will carry out its manifest purpose and intention in enacting the statute, but the operation of the law will then be confined to cases which plainly fall within its terms as well as its spirit and purpose.

*Coastal States Gas Producing Co. v. Pate,* 158 Tex. 171, 309 S.W.2d 828, 831 (Tex. 1958).

### Statutory Authority

 Coastal first argues the trial court committed reversible error by granting the City's application for temporary injunction because there is no statutory authority for an injunction. Coastal contends that without a pending lawsuit, pending condemnation proceedings or contractual permission, the City has no right and the trial court no authority to require Coastal to turn over its property to the City or aid the City in providing access for or producing evidence for a trial or for contractual acquisition in

excess of a lineal survey. In support of its argument, Coastal cites *Byrd Irrigation Co. v. Smythe*, 146 S.W. 1064 (Tex.Civ. App.—San Antonio 1912, no writ) and *Hailey*, 757 S.W.2d at 833. These cases, however, do not convince us the trial court erred.

In *Byrd*, the court found that the owner's property "should not be invaded *again* in order that witnesses may be qualified to lower the price" that the condemning authority would pay for the property. *Byrd*, 146 S.W. at 1065 (emphasis added). The *Byrd* court noted, however, that the condemning entity and its surveyor had free access to the land for more than a year for the purpose of making any and all surveys necessary. "They cut roads through the brush and timber ..., felled trees, and ran from 30 to 40 miles of lines.... [T]hey were permitted to do all they desired in connection with the land." *Id.* Here, Coastal agreed to a lineal survey, but not to allow the City to "do all [it] desired in connection with the land." The City is not asking for a "second bite of the apple" as was the condemning authority in *Byrd*.

█ In *Hailey*, the court determined only lineal surveys may be allowed prior to condemnation. *Hailey*, 757 S.W.2d at 835. Not all courts agree, however. *See Puryear v. Red River Auth. of Tex.*, 383 S.W.2d 818, 820–21 ( Tex.Civ.App.—Amarillo 1964, writ ref'd n.r.e.)(river authority was allowed to conduct core drilling prior to condemnation). Moreover, as explained in*Lapsley v. State*, 405 S.W.2d 406, 411 (Tex.Civ.App.—Texarkana 1966, writ ref'd n.r.e.), a condemning authority must "investigate all aspects of value" in order to negotiate in good faith, as is contemplated by the statutory requirement that negotiation is a prerequisite to exercising eminent domain powers. *See also State v. Hipp*, 832 S.W.2d 71, 78–79 (Tex.App.—Austin 1992, writ denied) (an offer "must be based on a reasonably thorough investigation and honest assessment of the amount of just compensation due the landowner").

Next in support of its argument that there is no statutory authority for an injunction, Coastal contends condemnation statutes should be strictly construed, putting particular emphasis on Texas Local Government Code, section 251.001, the current statute granting the power of eminent domain to municipalities. While noting that the statute does not grant express authority for the City either to preliminarily enter Coastal's land or conduct surveys and that there is no history to imply authority beyond lineal surveys, Coastal further observes that

> when the legislature repealed Art. 1109b V.A.T.S. and replaced it with Section 251.001 TEX. LOC. GOVT.CODE, it expressly removed that portion of the statute that authorized proceedings in condemnation and their preliminary procedures brought by a city to be governed by the railroad statutes, ... which authorized railroad corporations, and by statutory reference, cities to conduct preliminary surveys and examination of the land when such entity proposed to acquire same by eminent domain.

█ The removal of that language, however, is not significant here because no substantive changes were to occur through the Local Government Code's enactment, which occurred "as a part of the state's continuing statutory revision, begun by the Texas Legislative Council in 1963 as directed by the legislature...." TEX. LOC. GOV'T CODE § 1.001(a) (Vernon 1999). "The program contemplates a topic-by-topic revision of the state's general and permanent statute law **without substantive change**." *Id.* (emphasis added). "When a conflict exists between a former statute and a revision made pursuant to the legislature's directive to the Texas Legislative Council to make a nonsubstantive revision of the statutory law, the former statute will control." *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 654–55 (Tex.1989). "[T]he Legislative Council responsible for the codification process lacks the authority to change the substance of existing law.

It may merely rearrange statutes into a more easily accessible format, which is the stated purpose of the recodification scheme, but without making substantive change in the statutes." *Minton v. Perez,* 783 S.W.2d 803, 805 (Tex.App.—San Antonio 1990, orig. proceeding), *leave granted, mand. dismissed.* 841 S.W.2d 854 (Tex. 1992).

■ Prior to the enactment of the Local Government Code, a city's right to conduct preliminary surveys was explained in *Hicks v. Texas Municipal Power Agency,* 548 S.W.2d 949, 955 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). There the court construed article 1109b in conjunction with article 6318, and determined that a city's right to survey was governed by article 6318, the railroad statute, as set forth in article 1109b. Hence, a city's statutory pre-condemnation right to survey existed prior to adoption of the Local Government Code. Even if the current statutes, Local Government Code sections 251.001 and 252.002 (the successor statutes to 1109b), do not expressly authorize municipalities to conduct preliminary surveys, municipalities still have that right because enactment of the Local Government Code was to occur without substantive change.

Several cases have examined the implied statutory right to survey and its restrictions. In *Lewis v. Texas Power & Light Co.,* 276 S.W.2d 950, 954 (Tex.Civ.App.—Dallas 1955, writ ref'd n.r.e.), the court affirmed a temporary injunction for the purpose of making a lineal survey. In making its determination, the *Lewis* court relied on cases construing article 6318, which specifically provides railroads with the right to examine and survey for proposed routes, and to "enter upon . . . the lands . . . of any person" to do so. *Lewis,* 276 S.W.2d at 954; Tex.Rev.Civ. Stat. Ann. art. 6318 (Vernon 1926). While the *Lewis* court granted nothing further than the right to make a preliminary survey, that was the only type of inspection sought by applicant. Moreover, as the court also

recognized: " 'It has been stated broadly that the right of entry on property, in good faith, for the purpose of making a preliminary survey and investigation with the view of condemnation is a necessary incident of the right to condemn, . . . .' " *Lewis,* 276 S.W.2d at 954 (quoting 29 C.J.S., *Eminent Domain,* § 226 a).

The *Puryear* court held the statutes granting water control districts the specific authority "to go upon any lands for the purpose of making surveys" included the right for the water districts to conduct core drilling operations. *Puryear,* 383 S.W.2d at 820–21. Observing that construction of dams was essential to carrying out one of the authority's basic functions ("the control, conservation and orderly development of the watershed and water"), *Puryear* reasoned that allowing a water district to enter and survey the land without core drilling to determine the feasibility of locating a dam on the property would be contrary to legislative intent. The court further found core drilling to be "an essential step in determining the location of proposed dams." *Id.* at 821. Coastal distinguishes *Puryear,* contending that the construed statute provided a specific right to go upon the land and survey, a right not present in the applicable statute here, section 251.001 of the Local Government Code.

The *Hicks* court recognized the implied authority to conduct a preliminary lineal survey prior to condemnation, stating: "[g]enerally, courts have upheld the right of a governing body vested with condemnation power to enter into lands for the purpose of a preliminary survey either by express statutory grant or by implication." *Hicks,* 548 S.W.2d at 955. The *Hicks* court, however, refused to extend the right to survey to include the right to conduct core drilling operations.

*Hailey* like *Lewis* involved an electric utility company's right to condemn under Article 1436 of the Revised Civil Statutes. *Hailey,* 757 S.W.2d at 835. The *Hailey* court held that "[w]hile Article 1436 has

been expanded and interpreted in *Lewis* to allow a preliminary lineal survey prior to actual condemnation, we refuse to further erode the strict construction of our eminent domain statutes to permit core drilling or soil boring as incidental to a lineal survey." *Id.*

However, neither core drilling, nor soil boring are involved here. According to Chip Volz, branch manager of RMT, Inc., an environmental consulting firm hired by the City, a Phase I study involves reviewing state agency regulatory files and land use history, interviewing appropriate facility employees, and a "pretty thorough walk-around of the facility to identify obvious environmental conditions," but does not involve invasive drilling. Further, taking soil samples is not part of a Phase I examination. Volz further testified that a Phase I study could not be conducted without physically going on the tract, and that such a study is "just a thorough surface investigation," based on observations. The examiners may "turn over" rocks or "look underneath" drums but do not collect physical samples to be sent off for laboratory testing.

The trial court's order enjoins Coastal from:

(1) interfering or attempting to interfere in any manner with the City's right to enter, complete its lineal survey, and conduct an initial Phase I environmental site assessment, to include the following activities, to wit:

(a) A single site-reconnaissance investigation on [Coastal's] land ... to collect information on recognized environmental conditions in connection therewith;

(b) Said site reconnaissance investigation will include a visit to the property to visually observe same and any structure located thereon and document same through photographs of on-site facilities; and

(c) Visually observe adjacent properties for evidence of environmental problems; and

(2) from calling upon, contacting, or harassing the City or any of the City's agents, servants, representatives, employees or any independent contractors ... with whom the City has contracted, in any manner while they are upon [Coastal's] land conducting such lineal survey and initial Phase I environmental site assessment.

■ The City's request and the trial court's order contemplate a preliminary investigation and examination of the sort that would seem to be "necessary incident[s] of the right to condemn." *Lewis,* 276 S.W.2d at 954. Not included are invasive procedures such as core drilling, soil boring or subsurface soil testing of which the *Hicks* and *Hailey* courts disapproved. *Hicks,* 548 S.W.2d at 955; *Hailey,* 757 S.W.2d at 835. Inasmuch as the preliminary procedures here will be non-invasive, we find they are reasonably implied from statutes that authorize municipalities to use the power of eminent domain.[1] Having determined there is implied statutory authority for the City to conduct an initial Phase I environmental site assessment, we now consider Coastal's remaining arguments.

### Issuance of Temporary Injunction

■ Coastal further argues generally that the City failed to meet the required elements for injunctive relief, and specifically argues the City failed to show irreparable injury. Coastal also contends the issue for the appellate court here is whether the trial court erred in its determination and application of the law and that the trial court's discretion in granting the injunction is not involved because the law grants no right to the City for which it seeks an injunction. We disagree regard-

1. Whether any invasive procedures may be reasonably implied should be determined on a case-by-case basis.

ing whether the trial court's discretion is involved. Moreover, we have already held implied statutory authority exists for the City to conduct the site assessment.

■■■ At a temporary injunction hearing, "the only question before the trial court is whether the applicant is entitled to preservation of the status quo of the subject matter of the suit pending trial on the merits." *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978). Where the applicant has the right to enter onto the land in question, the "status quo [is] one of action, not of rest. Under such circumstances even mandatory injunctions are upheld." *Lewis,* 276 S.W.2d at 955. Furthermore, as explained by the Texas Supreme Court, the trial court may balance the equities involved. *Storey v. Central Hide & Rendering Co.,* 148 Tex. 509, 226 S.W.2d 615, 618–19 (1950). It may consider whether the degree of injury to the applicant would be slight or significant if the injunction were denied, and whether the injury to the opposing party would be slight or significant if the injunction were granted. Similarly, the effect on the public may be considered. *See id.*

■■■ The only issue for the appellate court is whether the trial court clearly abused its discretion in resolving that issue by granting or denying the temporary injunction. *Munson v. Milton,* 948 S.W.2d 813, 815 (Tex.App.—San Antonio 1997, writ denied). The trial court abuses its discretion when it " 'misapplies the law to the established facts or when the evidence does not reasonably support the conclusion that the applicant has a probable right of recovery.' " *Id.* (quoting *City of San Antonio v. Rankin,* 905 S.W.2d 427, 430 (Tex. App.—San Antonio 1995, no writ)). "All legitimate inferences from the evidence are drawn in favor of the trial court's judgment, and the trial court does not abuse its discretion where the evidence 'tends to sustain the cause of action as alleged.' " *Id.*

■■ "Generally, a movant qualifies for temporary injunctive relief by showing: (1) a probable right of recovery; (2) imminent, irreparable harm will occur in the interim if the request is denied; and (3) no adequate remedy at law exists." *Id.* Despite this general rule, however, section 65.011(1) of the Texas Civil Practices and Remedies Code provides that an injunction may be granted if "the applicant is entitled to the relief demanded and all of the relief requires the restraint of some act prejudicial to the applicant." Here the City has the implied statutory authority to conduct the environmental assessment. Thus, it is entitled to an injunction restraining Coastal from interfering with the assessment. *See* Tex. Civ. Prac. & Rem.Code Ann. § 65.011(1) (Vernon 1997).

### Advisory Opinion

■■■ Coastal finally argues "it was error for the Court to determine that such an estimate should or could become admissible evidence in the condemnation proceedings to be filed in the County Court at Law since no imminent harm has been shown by the City and the injunction merely addresses a hypothetical injury." Our courts, of course, are prohibited from issuing advisory opinions, the distinctive feature of which is that it decides an abstract question of law without binding the parties. *Texas Ass'n of Business v. Texas Air Control Bd.,* 852 S.W.2d 440, 444 (Tex. 1993). Our review of the trial court's order does not reveal any language making any determination of what evidence will be admissible in the condemnation proceeding. Further, because an implied statutory right of the City is involved, we do not agree that the injunction addresses merely an abstract question of law.

We hold the trial court did not abuse its discretion in granting the temporary injunction. We overrule Coastal's issues and affirm the judgment of the trial court.

AFFIRMED.