MISSOURI HIGHWAY AND TRANS-
PORTATION COMMISSION,
Plaintiff/Respondent/Appellant,

v.

Rey EILERS,
Defendant/Appellant/Respondent.

No. WD 38243.

Missouri Court of Appeals,
Western District.

March 3, 1987.

Motion for Rehearing and/or
Transfer to Supreme Court
Denied April 28, 1987.

Application to Transfer
Denied June 16, 1987.

Bruce A. Ring, Chief Counsel, Rich Tiem-
eyer, Asst. Chief Counsel, Thomas B. Gil-
liam, Jr., Asst. Counsel, Missouri Highway
and Transp. Com'n, Jefferson City, for
plaintiff/respondent/appellant.

Rey Eilers, St. Louis, pro se.

Before KENNEDY, P.J., and
LOWENSTEIN and GAITAN, JJ.

LOWENSTEIN, Judge.

The Missouri Highway and Transportation Commission sued Rey Eilers to enjoin him from denying the Commission access to Eilers' property. The Commission sought to enter the property, prior to condemnation, to conduct a soil survey. Eilers counterclaimed to enjoin the soil survey claiming it was a taking of property without just compensation. The trial court denied both injunctions and both parties appeal.

This lawsuit arises out of the Commission's plan to build a four-lane highway and bridge through northern Callaway and southern Audrain counties. Part of the proposed highway and bridge will cross Eilers' property. The tract in question is agricultural and is being utilized to develop an orchard. Preliminary steps to complete the highway project include a surface survey and soil survey of the affected tracts of land. A surface survey marks and measures the land and stakes the centerline of the highway. A soil survey determines whether the underlying soil is suitable for highway and here particularly for bridge construction. Conditions below the surface such as caverns and faults in rock, are examined by drilling holes and removing the soil for testing. In Eilers' case, the Commission would use a four wheel drive power wagon with a three inch auger mounted on the back to drill the holes. Approximately ten to twelve holes, three inches in diameter and a foot deep located 100 feet apart would be drilled and approximately five pounds of soil would be removed. Bridge sounding crews may also enter Eilers' land to take a two-inch core of subsurface rock.

The Commission had previously conducted the surface survey without incident. This suit arose when it then requested permission to conduct the soil survey. Eilers agreed to the soil survey provided the Commission indemnify and hold him harmless for any acts by the Commission while on the property. The Commission refused to "make any indemnity agreement that we would have sovereign immunity for." The Commission then sued Eilers to enjoin him from denying the Commission entry to the property. The Commission argues it is authorized by statute to enter the land and survey the soil. Eilers counterclaimed to enjoin the Commission from "taking" his property until just compensation is paid. Eilers claims the Commission is without authority to conduct the soil survey and claims the soil survey violates Article I, section 26 of the Missouri Constitution because it is a taking of property without just compensation. The Constitution states "private property shall not be taken or damaged for public use without just compensation. Such compensation shall be ascertained by a jury or a board ... and until the same be paid to the owner, or into court for the owner, the property shall not be disturbed ..." The trial court denied both injunctions.

The Commission's precondemnation authority is set out in § 227.120(13) and § 388.210(1) RSMo 1986. Section 227.-120(13) provides in part:

The state highways and transportation commission also shall have the same authority to enter upon private lands to survey and determine the most advantageous route of any state highway as granted, under section 388.210, RSMo 1949, to railroad corporations.

Section 388.210(1) gives railroads the power:

To cause such examination and survey for its proposed railroad to be made as may be necessary to the selection of the most advantageous route ...

The Commission contends a soil survey is within the ambit of the "survey" authorized by the statutes. Eilers argues to the contrary.

▬ This court does not believe § 227.-120(13) or § 388.210(1) authorize a precondemnation soil survey. First, eminent domain statutes must be strictly construed. *Maryland Plaza Redevelopment v. Greenberg*, 594 S.W.2d 284, 292 (Mo.App.1979). Neither § 227.120(13) nor § 388.210(1) specifically mention a soil survey and thus the statutes on their face do not support the Commission's position. Second, statutory language should be interpreted according

to its plain and ordinary meaning. *State ex rel. LeBeau v. Kelly,* 697 S.W.2d 312, 314 (Mo.App.1985). The word survey is commonly used to indicate the measurement of land. 83 C.J.S. Survey p. 920 (1953). A survey is "an actual examination of the surface of the ground." *Hahn v. Cotton et al,* 136 Mo. 216, 37 S.W. 919, 920 (Mo. 1896), and "merely evidence of location and boundary." *Gibson v. Chouteau et al,* 39 Mo. 536, 562 (Mo.1865). *See also, Indiana State Highway Commission v. Ziliak et al,* 428 N.E.2d 275, 279 (Ind.App.1981) (a survey is an act of viewing and measuring surface areas). Drilling holes and taking rock cores are not activities ordinarily within the ambit of a survey. *Hicks v. Texas Municipal Power Agency,* 548 S.W.2d 949 (Tex.Civ.App.1977).

Third, when the legislature has intended for a survey to mean something different from an "examination of the surface," it has so stated. For example, § 60.530 RSMo 1978 speaks to "geodetic surveys," § 242.720 to "survey of the lands both surface and underground," and § 256.010 to "scientific, geological and mineralogical survey." If the legislature had intended to include a soil survey within § 227.120 or § 388.210, it would not have used the singular term "survey."

Fourth, other authorities hold that the right to conduct a precondemnation survey is not authority to dig up private property. In *County of Kane v. Elmhurst Nat. Bank,* 111 Ill.App.3d 292, 67 Ill.Dec. 25, 443 N.E.2d 1149 (1982), the county sought to enter private land to conduct surveys, appraisals and subsoil tests pursuant to a highway construction project. The landowners claimed the county was without authority to conduct the tests. Section 5–803 of the Illinois Road and Bridges Act permitted "making surveys and the determination of the amount of property necessary to be taken or damaged in connection with any highway project ..." The court found that while surface surveys were authorized by § 5–803, subsurface and geologic surveys were not. Soil surveys "involve substantial and not merely incidental disruption and damage to the landowners' property." *Id.* 67 Ill.Dec. at 28, 443 P.2d at

1152. The county had to either obtain the land owner's consent for the soil survey or file a prior condemnation action before it could enter onto the land. *Id.* 67 Ill.Dec. at 30, 443 P.2d at 1154. In *Hicks v. Texas Municipal Power Agency, supra,* the court analyzed a statute virtually identical to § 388.210(1) and determined that the word "survey" authorized a "lineal survey" and not core drilling operations. 548 S.W.2d at 955–56. *See also, Mackie v. Mayor and Com'rs of Town of Elktown,* 265 Md. 410, 290 A.2d 500 (1972), *Jacobsen v. Superior Court of Sonoma County,* 192 Cal. 319, 219 P. 986 (1923). Finally, statutes should be construed to avoid constitutional problems. *First National Bank of St. Joseph et al v. Buchanan County et al,* 205 S.W.2d 726, 730 (Mo.1947). As discussed in the next portion of this opinion, if § 227.120(13) and § 388.210(1) are read to authorize soil surveys, they will violate constitutional restrictions on the taking and damaging of private property without just compensation.

■ Article One, section 26 of the Missouri Constitution states: "That private property shall not be taken or damaged for public use without just compensation." It is not necessary that a landowner show an actual physical taking. It is necessary, however, to prove "an invasion or appropriation of some valuable property right which the landowner has to the legal and proper use of his property ..." *Roth v. State Highway Commission of Missouri,* 688 S.W.2d 775, 777 (Mo.App.1985), quoting *Hamer v. State Highway Commission,* 304 S.W.2d 869, 871 (Mo.1957).

■ The Commission proposes to enter Eilers' land with a four wheel drive wagon, drill ten to twelve holes and remove approximately five pounds of soil from the property. The Commission may also drill a two-inch core of the subsurface rock. All this is to be done without the landowner's consent. Although the soil survey is not an intrusion of an overwhelming magnitude, it is still an intrusion and interference with Eiler's rights as a private landowner. A soil survey conducted without Eilers'

consent subverts his right to use and enjoy his property in fee simple absolute. This is not constitutionally permissible. Accordingly, the soil survey amounts to a "taking" and the Commission may not conduct the soil survey until it receives Eilers' consent or intiates judicial proceedings and pays the damages for a temporary easement before entering the land. Chapter 523 RSMo; Rule 86; *See generally Missouri Highway and Transportation Commission v. Pracht,* 665 S.W.2d 697 (Mo. App.1984).

While it may be burdensome for the Commission to condemn a temporary easement for a soil survey and then later condemn the entire tract for the highway, the constitutional mandate that property not be taken or disturbed without prior compensation, and the landowner's right to freely use his land supersede any efficiency concerns. In addition, the Commission has in the past apparently obtained landowners' consent to conduct soil surveys.

The Commission says it fears time, expense and judicial duplication will result if two proceedings on each piece of land are required. It is unlikely that many landowners will share Eilers' concerns about possible tort liability. Also, where the intrusion is minimal and the drillings are small it could be assumed the landowner would not find it economically feasible to litigate the amount of minimal monetary damages. Most landowners would also realize it would be to their benefit to let the Commission do the borings on the chance the test results would convince the Commission to relocate the project.

This decision does not pass upon the validity of the quest by Eilers for a hold harmless agreement by the Commission. The court now merely holds the soil survey is a taking under the Constitution. Without statutory authority to go on the owner's land, and without the owner's consent, the Commission must go into court and on payment of the damage to be done, may then take the soil samples. This opinion does not deny the necessity and prudence of obtaining such samples prior to acquiring the land and building the bridge.

*State ex rel. Rhodes v. Crouch,* 621 S.W.2d 47 (Mo. banc 1981).

What cannot be avoided under these facts is the state, against the will of the landowner, physically will enter the land and take and alter the land. Although the intrusion and taking are minimal here, the constitutional guarantee must prevail. In other cases the disruption may be greater and the holes larger—so the court now is unwilling to read a soil survey of any kind into the statutory definition. To do so would still leave to question or litigation, a case by case factual determination as to whether the soil testing was so substantial as to necessitate condemning an easement. The statute does not provide for a soil survey, and under the standard of strict construction of condemnation statutes, the soil survey is inconsistent with the right to control the fee. *Robinson v. Arkansas State Game & Fishing Commission,* 263 Ark. 462, 565 S.W.2d 433, 435 (1978); *Chambers v. The Cincinnati and Georgia Railroad,* 69 Ga. 320 (1882). Any change in the statute is up to the legislature. *In Re Kansas City Ordinance No. 39946,* 298 Mo. 569, 252 S.W. 404, 407 (Mo. banc 1923); *Walther v. Warner,* 25 Mo. 277 (1857).

Accordingly, the trial court's judgment denying the Commission's injunction is affirmed. The order denying Eilers' injunction was based on an erroroneous application of the law and is reversed and remanded with directions to grant Eilers relief based on the fact the Commission has not paid any assessed damages as prescribed by statute.

All concur.