**BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF SAN MIGUEL, State of Colorado, a body corporate and politic, Plaintiff–Appellee,**

v.

**Judy ROBERTS and McCollum Family Limited Partnership Number One, L.L.L.P., a Colorado limited liability limited partnership, Defendants–Appellants.**

No. 05CA1370.

Colorado Court of Appeals, Div. VI.

Dec. 28, 2006.

Tisdel Law Firm, P.C., Andrew A. Mueller, Tiffany A. Pezzulo, Ouray, Colorado, for Defendants–Appellants.

Opinion by Judge CARPARELLI.

Defendants, Judy Roberts and the McCollum Family Limited Partnership Number One, LLLP, appeal the trial court's judgment granting plaintiff, the Board of County Commissioners of the County of San Miguel, State of Colorado, declaratory and injunctive relief authorizing the County's surveyor to enter defendants' property to do field survey work and enjoining defendants from prohibiting access to their property by the County's surveyor. Defendants also appeal the trial court's order purporting to retain jurisdiction over any claims for damages resulting from survey work conducted by the County's surveyor. We affirm the judgment and vacate the order regarding the retention of jurisdiction as to damages.

I.

Defendant McCollum owns real property in Section 16, Township 42 North, Range 13 West, N.M.P.M., of San Miguel County. As pertinent here, defendant Roberts owns a seventy-five percent interest in a portion of Section 17, which is the adjacent section west of Section 16, as tenant in common with the Brad K. and Della J. Gray Living Trust. The Gray Trust is not a party to this action.

A road that was once part of the County's official road map crosses Sections 16 and 17. However, when defendants' predecessor acquired a patent to Section 16, the title did not include an exception that would allow for public use of the road.

In March 2004, the County contacted defendants and made a preliminary offer to purchase a public road easement. Defendants rejected the offer. Four months later, the County's surveyor notified defendants and the Gray Trust that he intended to survey the property, and he proposed a schedule for the survey. Defendants refused to grant the surveyor access to the property.

The County filed its complaint with the trial court seeking declaratory and injunctive

Steven J. Zwick, San Miguel County Attorney, Kevin J. Geiger, Assistant County Attorney, Telluride, Colorado, for Plaintiff–Appellee.

relief authorizing the County's surveyor to access defendants' property. The trial court ruled that the County's surveyor was authorized to enter defendants' property to perform survey work needed for a legal description of the road and enjoined defendants from prohibiting access to their property by the County's surveyor.

## II.

Defendants assert that the trial court disregarded the plain meaning of § 18–4–515, C.R.S.2006, when it permitted the County to enter their property under the authority of that provision for the purpose of conducting a road survey in anticipation of condemnation. We disagree.

In accordance with § 18–4–515(2), C.R.S. 2006, a licensed professional land surveyor may lawfully enter public and private land to investigate and utilize boundary evidence and to perform boundary surveys after notifying the landowner not less than fourteen days before the desired date of entry. In response to such notice, the landowner may modify the time and other provisions of the surveyor's access, as long as the modifications do not unreasonably restrict completion of the survey. Section 18–4–515(3), C.R.S. 2006. The surveyor is liable for actual damages caused to the property in the course of the survey. Section 18–4–515(5), C.R.S.2006.

Section 18–4–515(1), C.R.S.2006, states that the section's provisions "do not affect or supersede the provisions and requirements of articles 1 to 7 of title 38, C.R.S., concerning condemnation proceedings, notwithstanding any laws to the contrary."

█ Statutory interpretation is a question of law subject to de novo review. *Klinger v. Adams County Sch. Dist. No. 50,* 130 P.3d 1027, 1031 (Colo.2006); *Hendricks v. People,* 10 P.3d 1231 (Colo.2000).

█ When interpreting statutory language, we give words and phrases their plain and ordinary meaning, read them in context, and construe them literally according to common usage unless they have acquired a technical meaning by legislative definition. *Klinger, supra; Carlson v. Ferris,* 85 P.3d 504 (Colo.2003). When the plain language of a statute is free from ambiguity, other rules of statutory construction are unnecessary. *Kinder v. Indus. Claim Appeals Office,* 976 P.2d 295 (Colo.App.1998); *Spanish Peaks Mental Health Ctr. v. Huffaker,* 928 P.2d 741 (Colo.App.1996). We resort to extraneous evidence for clarification of legislative intent only when an uncertainty exists regarding the statute's meaning. *McNichols v. City & County of Denver,* 120 Colo. 380, 209 P.2d 910 (1949).

### A.

█ Defendants first argue that "§ 18–4–515 does not apply to condemnation proceedings" and may not "be used by public entities in place of the applicable condemnation procedures." Defendants' argument is premised on the provision's statement that it does not "affect or supersede" statutory condemnation provisions and requirements. We are not persuaded.

The word "affect" means "to produce an effect . . . upon," "to produce a material influence upon or alteration in," or "to have a detrimental influence on." *Webster's Third New International Dictionary* 35 (1986). Giving the word "affect" its plain and ordinary meaning, we conclude that § 18–4–515 does not change, alter, or lessen the requirements of articles 1 through 7 of title 38 in condemnation actions.

The word "supersede" means to "be superior to," "to make obsolete, inferior, or outmoded," "to make void," "to make superfluous or unnecessary," "to take the place of," or "to cause to be supplanted in a position or function." *Webster's, supra,* at 2295. Giving the word "supersede" its plain and ordinary meaning, we conclude that § 18–4–515 does not void, replace, supplant, or make unnecessary any provisions or requirements of articles 1 through 7 of title 38 in condemnation actions.

Therefore, we agree with defendants that § 18–4–515 may not be used "in place of the applicable condemnation procedures." However, contrary to defendants' argument, there is no basis to conclude that it "does not apply" or may not be used in support of or in

conjunction with a contemplated condemnation proceeding.

### B.

Defendants also argue that the County used § 18–4–515 "as a means of taking private property" and, thereby, disregarded the rights afforded them in the condemnation statutes. We disagree.

### 1.

Article II, § 15 of the Colorado Constitution provides that "[p]rivate property shall not be taken or damaged, for public or private use, without just compensation." A taking occurs when an entity clothed with the power of eminent domain substantially deprives a property owner of the use and enjoyment of the property. *City of Northglenn v. Grynberg*, 846 P.2d 175, 178 (Colo. 1993). A taking can occur if the government interferes with the physical use, possession, enjoyment, or disposition of private property, or if the government exercises dominion and control over private property. *Grynberg, supra*, 846 P.2d at 182. If the government takes private property for a public purpose, it must pay just compensation, measured by the value of the landowner's lost interest, not the taker's gain. *Fowler Irrevocable Trust 1992–1 v. City of Boulder*, 17 P.3d 797, 802 (Colo.2001).

A temporary taking occurs for a definite period of time, at the end of which the landowner's legal interest and occupation of the property are reestablished. *Fowler, supra*, 17 P.3d at 802. Because of its limited duration, a temporary taking requires that just compensation be paid based on the fair rental value of the property during the period of the taking. *Fowler, supra*, 17 P.3d at 802.

When reviewing a court's action in eminent domain proceedings, we defer to the trial court's findings of fact and conduct de novo review of its legal conclusions. *Fowler, supra*, 17 P.3d at 802. The determination of whether a taking has occurred is a question of law that we review de novo. *Pub. Serv. Co. v. Van Wyk*, 27 P.3d 377 (Colo.2001); *see also City of Northglenn v.*

*Grynberg, supra* (in eminent domain proceedings, the only issue decided by the jury is the amount of compensation awarded, while the trial court determines whether a taking has occurred).

### 2.

The County's surveyor estimated that his employees would need to access defendants' property as many as seventeen times during seventeen days of a three-week period. A maximum of five individuals would enter the property at any given time, consisting of two two-man crews and the surveyor himself.

Defendants use their property for private recreation such as walking, hiking, biking, and wildlife observation. Although defendants also make their property available to paying clients for recreational activities and hunting, the proposed schedule called for the survey to be completed before the start of hunting season, and defendants presented no evidence that they had, and would be forced to cancel, commitments to paying clients. Defendants also use the property for some agricultural purposes, including cattle grazing. The record contains no evidence of the amount, if any, of financial gain defendants derive from the recreational and agricultural activities that take place on their property.

The surveyor testified that he would take precautions to avoid the possible detrimental effects of his survey activities to farming activities, including being cautious that cattle would not escape enclosed areas and using motorized vehicles only on roads. In hunting areas, the surveyor and his employees would wear orange safety vests to remain visible and would request that landowners maintain a safety zone of one-half mile between the survey crews and any firearms activities.

To create a line of sight from survey point to survey point, the surveyor would remove tree limbs or brush where necessary. To the extent that tree limbs would be removed, the loss of those limbs would be permanent. To the extent that brush would be removed, it would also be permanent unless it was susceptible of replacement. The surveyor would also establish survey monumentation on the

property, such as three-quarter inch metal bars driven into each quarter section corner and protruding from the ground five or six inches. To the extent that the metal bars would remain on the property, they would be permanent. The surveyor would also use temporary markers on the property, including six-inch workman spikes in the ground and marking tape on trees.

The trial court found, with record support, that the requested survey access was temporary, limited, and brief. It concluded the survey would have a minimal impact on the land and would not substantially interfere with defendants' use and enjoyment of the property. Based on these findings and conclusions, the court held that access to conduct the survey was not a compensable taking and did not require an eminent domain action.

### 3.

Defendants cite cases from other jurisdictions in support of their contention that a government entity's entry onto private property for survey purposes prior to initiating eminent domain proceedings constitutes a compensable taking. We are not persuaded.

In *Jacobsen v. Superior Court*, 192 Cal. 319, 219 P. 986, 991 (1923), the trial court prohibited a municipal water district from entering private property to perform drilling tests, despite the existence of a statute that permitted the state to conduct surveys "[i]n all cases where land is required for public use." The California Supreme Court held that the entry upon private lands permitted under the statute was limited to innocuous entry and superficial examination "as would suffice for the making of surveys or maps." There, the government entity sought to bring heavy equipment onto the property during a 60–day period to drill test holes 150 feet deep and to excavate ditches approximately 15 feet deep and 8 feet across. The court held that such activities constituted a taking because they exceeded the permissible "superficial examination" and interfered with the landowners' possession of the property. *Jacobsen, supra*, 219 P. at 991.

Similarly, in *Missouri Highway & Transportation Commission v. Eilers*, 729 S.W.2d 471 (Mo.Ct.App.1987), the court held that a soil survey requiring drilling and use of heavy machinery on private property would amount to a taking and required that a temporary easement be obtained by condemnation before the survey could be conducted.

Here, however, the County sought to perform an examination of the boundaries of defendants' property that did not include lengthy and exclusive occupation of portions of the property, the use of heavy equipment, or significant disturbance of the property itself. Unlike the courts in California and Missouri, the trial court here found that the proposed conduct was temporary, limited, and brief, would have minimal impact on the land, and would not substantially interfere with defendants' use and enjoyment of the property. To the extent that the survey would result in any physical damage to the property, § 18–4–515 provides authority for compensating defendants, and the trial court so noted.

### 4.

Defendants also rely on *Iowa State Highway Commission v. Hipp*, 259 Iowa 1082, 147 N.W.2d 195 (1966), to support their contention that a survey prior to eminent domain proceedings is a taking. There, however, the court held that the condemnation statute did not, alone, grant the state the right to enter private property to conduct a survey prior to exercising eminent domain, and that, absent express statutory authority, such entry would constitute a trespass. Here, § 18–4–515 provides the express authority that was absent in that case.

### C.

Defendants further argue that the trial court erred when it permitted the survey because, contrary to the language of § 18–4–515(2), the County's purpose was not to investigate and utilize boundary evidence or to perform a boundary survey related to an existing legal interest in property. We are not persuaded.

### 1.

The surveyor testified that the County needed to determine the beginning and end points of the proposed road, and that to do so, he needed to go around the perimeter of Section 16 to establish its boundaries. He stated that the survey would enable him to locate and prepare a legal description for the road.

In addition, the County's complaint stated that its purpose was to acquire boundary evidence so that it could negotiate for the acquisition of the road and institute eminent domain proceedings if negotiations failed.

### 2.

■ Defendants do not dispute that the surveyor would investigate and the County would utilize boundary evidence, which is the purpose permitted by § 18–4–515. Instead, they assert that the statutory term "boundary survey cannot be interpreted to mean a survey for a road the county seeks to acquire through condemnation." They also assert that the entry onto the property "is not to investigate and utilize boundary evidence or to perform a boundary survey, [but] rather, the purpose of the entry is to perform a survey in connection with the condemnation of a road." They argue "that § 18–4–515 applies to neighboring landowners who need to conduct boundary surveys and utilize boundary evidence."

However, the statute does not state or imply that a surveyor must conduct the survey for the benefit of an existing legal interest in neighboring land or that the lawfulness of the entry is conditioned on the manner in which the surveyor will utilize the evidence obtained by the survey, or on the purposes motivating the survey. Nor does it state or imply that the boundary evidence may only be utilized to describe the boundaries themselves, and may not be utilized to create a derivative legal description related to the land.

Therefore, we conclude that defendants' proposed interpretation is strained. Giving the statutory words their commonly accepted meaning, we conclude that the statute simply states that a licensed surveyor may lawfully enter land to investigate boundary evidence, to utilize such evidence, and to perform boundary surveys. *See People v. Trusty*, 53 P.3d 668 (Colo.App.2001).

### D.

Because the trial court's findings of fact have support in the record, we are bound by them. We conclude that the trial court did not err when it ruled, based on the evidence before it, that the temporary, limited, and brief access to defendants' property by the survey crews (1) would have a minimal impact on the land; (2) would not substantially interfere with defendants' use and enjoyment of the property; and (3) would not be a compensable taking. Consequently, we also conclude that to conduct the survey, the County was not required to first initiate an eminent domain action. Accordingly, we reject defendants' contention that the County's action to obtain a declaratory judgment permitting it to conduct the survey disregarded the rights afforded them in the condemnation statutes.

### III.

Defendants contend that the trial court erred in holding that the Gray Trust, a tenant in common owning a minority interest in the property, was not an indispensable party to the County's action seeking declaratory and injunctive relief to permit survey access. We disagree.

### A.

■ Whether a person or entity is indispensable turns on practical considerations particular to the facts of a case, including the nature of the party's claimed interest and the character of the claim for relief. *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 890 (1986); *Jacobucci v. Dist. Court*, 189 Colo. 380, 390, 541 P.2d 667, 674 (1975); *Davis v. Maddox*, 169 Colo. 433, 457 P.2d 394 (1969); *Dunne v. Shenandoah Homeowners Ass'n*, 12 P.3d 340 (Colo.App. 2000). Mere interest in the subject matter of litigation, even if the interest is substantial, is insufficient to make a party indispensable. *Williamson v. Downs*, 829 P.2d 498, 500

(Colo.App.1992). "Unless the trial court's resolution of a joinder issue reflects a clear abuse of discretion, we may not overturn that decision on appeal." *Dunne v. Shenandoah Homeowners Ass'n, supra,* 12 P.3d at 344.

■ Here, the County sought declaratory relief under C.R.C.P. 57. C.R.C.P. 57(j) and § 13–51–115, C.R.S.2006, require the joinder of all persons who have or claim any interest that would be affected by the declaration. In accordance with C.R.C.P. 19(a)(2)(A), a person must be joined if disposition in his absence may impair his ability to protect that interest. Other considerations include "the danger of inconsistent decisions, avoidance of multiplicity of suits, and the reluctance of a court to render a decision which will not finally settle the controversy before it." *Dunne v. Shenandoah Homeowners Ass'n, supra,* 12 P.3d at 344.

■ C.R.C.P. 19 also provides that, when feasible, a person must be joined as a party if, in the person's absence, (1) complete relief cannot be accorded among those already parties, or (2) disposition of the action might leave any party to the action subject to a substantial risk of incurring multiple or inconsistent obligations by reason of the absent party's claimed interest.

> Not every person who has an interest in issues raised in a particular civil action must be joined as a party to that action. If the interests of the parties before the court may be finally adjudicated without adversely affecting the rights of an absent person, the absent party need not be joined.

*Brody v. Bock,* 897 P.2d 769, 778 (Colo.1995) (citation omitted).

### B.

■ As we have already noted, § 18–4–515(2) permits a licensed land surveyor, after notice, lawfully to enter public and private land to investigate and utilize boundary evidence, and to perform boundary surveys. A landowner may not prevent a surveyor's lawful entry by merely ignoring the notice or imposing unreasonable conditions on the surveyor's entry. The statute does not permit a landowner to simply withhold consent, object, or forbid entry and, thereby, prevent a surveyor from lawfully entering land to investigate and utilize boundary evidence and to perform surveys. Thus, a landowner who wants to prevent a surveyor from entering private land may seek declaratory and injunctive relief in advance of the surveyor's scheduled entry or may wait until after the surveyor enters the land and sue for trespass.

### C.

Here, the County sought to prepare a legal description of a road in Section 16, which was owned by McCollum. The surveyor testified that to do so, he needed to go around the perimeter of Section 16 to establish its boundaries. Consequently, the surveyor also sought to enter Section 17, in which Roberts had a seventy-five percent interest and the Gray Trust had a twenty-five percent interest. Roberts and the Trust both responded to the notice through the same attorney and refused to allow entry. Upon stating its objection, the Trust had the options described above. When the County sued Roberts, but not the Trust, the Trust had the option of filing its own suit, intervening in the existing suit, or waiting until the surveyor entered to sue for trespass.

### 1.

■ We first conclude that any injury to the Trust arising from the County's failure to include it in the suit was negligible at best. Had the court concluded that the County could not conduct its survey, there would have been no entry on the Trust's land and, thus, no adverse effect on the Trust's rights. Although the court granted judgment in favor of the County, the Trust retains the right to sue for trespass, the same right it would have had in the absence of the County's suit against McCollum and Roberts.

If the survey results in any damage to Section 17, the Trust retains the right to seek compensation for such damage, under § 18–4–515(5). And although an effort to seek compensation for a taking under article II, § 15 of the Colorado Constitution or for trespass might not be successful, because the

Trust is not a party to this action it could yet assert such claims.

### 2.

Defendants also assert that the trial court's ruling ignored the threat of multifarious litigation. Relying on *People ex rel. Inter-Church Temperance Movement v. Baker*, 133 Colo. 398, 297 P.2d 273 (1956), defendants argue that, absent the Trust, the action would not settle the questions presented regarding the survey because the Trust would not be bound by the trial court's declaratory judgment and could still bring a separate action against the County.

Indeed, courts are reluctant to render decisions that will not finally settle the controversies before them. *Dunne v. Shenandoah Homeowners Ass'n, supra.* However, such reluctance may be based on the desire not to expose a named party to the risk of multiple or inconsistent obligations, or on judicial economy.

In *Williamson v. Downs, supra,* a division of this court applied the requirements of C.R.C.P. 19(a)(2)(B) by focusing on whether disposition of the action would leave the defendant subject to a substantial risk of incurring multiple or inconsistent obligations by reason of the absent party's claimed interest.

Focusing on the risk to the defendant is appropriate because the plaintiff chooses whom to sue and voluntarily participates in an action without naming an interested party. In opposing a motion to join an indispensable party, the plaintiff accepts the risk of incurring multiple or inconsistent obligations by reason of that party's interest. In contrast, the defendant who seeks to require that an unnamed party be joined is seeking to avoid its own risk of multiple or inconsistent obligations by reason of the absent party's interest.

Here, defendants did not assert that proceeding without the Trust would expose them to a risk of incurring multiple or inconsistent obligations or that they could not be accorded complete relief absent the Trust. Therefore, although proceeding without the Trust might not serve judicial economy and might expose the County to the risk of multiple or inconsistent obligations, it would not visit an injustice on these defendants or the Trust.

### D.

Accordingly, we conclude that the trial court acted within its discretion when it denied defendants' motion to join the Trust as an indispensable party.

### IV.

However, we agree with defendants that the trial court erred when it stated that it would retain jurisdiction over a potential damages claim that had not been asserted against the County's surveyor.

### A.

The County sought declaratory and injunctive relief to permit it to perform a land survey. In its first claim for relief, the County asked for a declaration that its surveyor and his designated employees were authorized to enter defendants' property for the purpose of conducting a field survey of the boundaries of the former road alignment within McCollum's Section 16. In its second claim, the County asked for an injunction requiring defendants to allow the County's surveyor and his designated employees reasonable and appropriate access to their property for the purpose of conducting the survey, and prohibiting defendants from interfering with that access. Defendants denied that the County was entitled to relief and asked the court to enter judgment in their favor, specifically on the ground that the surveyor and his designated employees were not entitled to access to their property. Defendants did not state a counterclaim for damages arising from the survey.

Although defendants did not seek damages, the trial court's order granting declaratory relief stated, "The Court retains jurisdiction over any damages to the Defendants' property resulting from any survey conducted by or at the direction of [the County]." The trial court certified its judgment regarding the County's survey access as final under C.R.C.P. 54(b), but again ordered that it would retain jurisdiction over any further

damage claims resulting from any survey activity conducted by the County.

### B.

■ We first reject the County's argument that, because the C.R.C.P. 54(b) certification did not include the order retaining jurisdiction, it is beyond our jurisdiction.

■ This court has initial jurisdiction over appeals from final judgments of the district courts. Section 13–4–102(1), C.R.S. 2006. "Generally, judgment in a case is deemed final when it ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do except to execute the judgment." *Civil Serv. Comm'n v. Carney*, 97 P.3d 961, 967 (Colo. 2004). When a district court has entered judgment on all claims for relief and all counterclaims, the judgment is final, and there is no need for certification under C.R.C.P. 54(b). Certification of final judgment under C.R.C.P. 54(b) is appropriate only when more than one claim for relief is presented in an action, or when multiple parties are involved, and there are claims or counterclaims remaining to be resolved.

Here, the trial court ruled on the County's claims for declaratory and injunctive relief, and, in doing so, resolved all claims the County had stated as to all parties the County had named. Hence, C.R.C.P. 54(b) certification was unnecessary. The fact that the court certified that its judgment as to those claims was final does not limit our jurisdiction to review all orders the court entered as part of the judgment.

### C.

■ Courts may not consider matters that concern speculative injury. *Bd. of Dirs. v. Nat'l Union Fire Ins. Co.*, 105 P.3d 653 (Colo.2005). Especially where parties seek declaratory relief, an actual controversy must exist. The trial court has jurisdiction only if the case contains an existing legal controversy, rather than the mere possibility of a future claim. *Bd. of County Comm'rs v. Park County Sportsmen's Ranch, LLP*, 45 P.3d 693, 698 (Colo.2002); *City of Colorado*

*Springs v. Bull*, 143 P.3d 1127 (Colo.App. 2006).

### D.

■ The court entered judgment on all claims stated by the County, defendants made no counterclaims, and the survey had not yet taken place. Because the court could not assume that the survey activities proposed by the County would cause any compensable, physical damage to defendants' property, any damage claim would have been speculative at the time the County requested declaratory relief. Thus, we conclude that the trial court's jurisdiction ended upon its entry of judgment in favor of the County. To the extent the trial court's order states otherwise, it is erroneous.

### V.

Because we affirm the judgment in favor of the County, we deny defendants' request for reasonable attorney fees and costs.

Judgment in favor of the County is affirmed; the trial court's order regarding retention of jurisdiction is vacated.

Judge WEBB and Judge NEY * concur.